BRITISH-AMERICAN INSURANCE COMPANY OF NEW YORK
v. COLUMBIAN OPTICAL COMPANY.

FILED JUNE 8, 1906. No. 14,338.

Evidence examined, and *held* insufficient to sustain the verdict.

ERROR to the district court for Douglas county: HOW-
ARD KENNEDY, JR., JUDGE. *Reversed.*

*Greene, Breckenridge & Kinsler,* for plaintiff in error.

*Hall & Stout, contra.*

EPPERSON, C.

On the 20th day of June, 1903, the plaintiff held a policy
of fire insurance issued by the defendant company upon
plaintiff's stock of optical goods situate at No. 211 South
Sixteenth street, Omaha, Nebraska. The plaintiff also
held $8,000 concurrent insurance issued by other com-
panies. On that day there was a fire in plaintiff's place of
business, which it alleges resulted in its damage to the
extent of $6,594.03. To recover one-fifth of this amount,
with interest, the plaintiff brought this action. A trial
was had to a jury, which resulted in a verdict and judg-
ment for the plaintiff in the amount sued for. The defend-
ant prosecutes error to this court.

Many assignments of error were argued, but we find it
necessary to consider only the sufficiency of the evidence as
to the damages sustained. The proof shows that the prop-
erty damaged consisted almost entirely of 175,000 lenses,
evidence as to the value of which was very unsatisfactory
and indefinite; and it is maintained by the defendant that
the same is insufficient to sustain the verdict of the jury.
Mr. Agnew, the president of the plaintiff company, was the
principal witness in behalf of the plaintiff. He testified
that the value of the damaged property was $6,594.03. He
reached this conclusion by taking the inventory of his stock

of goods made in January, 1903, adding thereto the amount of the goods bought prior to June 20, 1903, and deducting the goods sold. There is a manifest difference between the value of the damaged goods and the amount of damage to the goods, and as to the latter no definite amount is fixed by the witness, nor was there testimony given from which the jury could intelligently arrive at the amount. The proof shows that the damaged lenses at the time of the fire were packed in small boxes, each containing about twelve dozen, and that they have been kept separate since the fire from the other merchandise of the plaintiff company. Mr. Agnew testified: "I mean that I did not take each lens, but I looked at a great many boxes, and my judgment, in the optical business for years, told me that the stuff that was there was not worth while doing anything with." He further said that many of the lenses would have to be thrown away, but did not know what proportion; that the rest of them, if they are not scratched, or broken or damaged in any way, can be cleaned; that his investigation of the damage was only of a part of the boxes; that since January 1, 1904, he has cleaned a part of them; that at the time of the trial he was unable to tell how many of them could be cleaned, and that such as could be cleaned would have a value for second quality lenses. He said: "Q. They would have a value for second quality lenses, then, wouldn't they? A. Yes, sir. Q. How much? A. Well, that is a question. I do not know how much. I will have to find out. Q. In proportion? A. I will have to find out. I can tell you, as I say, this summer, when I find out how many I have got. Q. When we take this case up after our summer vacation you can let us know? A. Yes. * * * Q. All that is necessary to do to these lenses is to clean them up? A. No, sir; many of them we have to throw away. Q. How many, what proportion? A. I don't know; I can tell you this summer some time. Q. These lenses there can all be cleaned, can they not? A. No, a good many of them are broken and lost. Q. All that are not broken; all that are

not water stained? A. No, there is a lot with scratches in. Q. All that are not scratched? A. Yes. Q. The rest can be cleaned? A. Yes; if they are not scratched or broken or damaged in any way, of course, we can clean them. Q. How many are there of that kind? A. I will tell you this summer. * * . * Q. Then you could have found out, could you not, Mr. Agnew, exactly what amount of merchandise you had left after the fire? A. If you had not denied liability. That is what I am doing now, and I expect it will take one man over a year at the rate of one lens apiece for ten hours a day—one lens per minute, ten hours a day; and then he can't do that average. What I mean is this: On the lenses that I had in the place it will take one man 290 some days—I figured it up—at the rate of one lens a minute for ten hours a day, to handle them. Now then, some of those lenses it takes us four or five and ten minutes to clean." Mr. Riggs, an expert optician, testified also that, in his opinion, it would cost more to clean and focus the lenses than they were worth. He testified: "I selected lenses from what appeared to me to be the best, and also what appeared to be the ones in the worst condition, and also at different parts at random; not any special part of the lenses, but just as I would naturally go through them to estimate the amount of the loss." As to the condition in which he found the property after the fire, he says: "The envelopes in which the lenses were contained were, in a great majority of cases, destroyed. The ends of the boxes were destroyed, and the lenses themselves were covered with the result of a combination of smoke and water, I presume. It was a dark stain—looked like smoke—which could not be removed by any ordinary means, and some of them, of course, worse than others; but the ones that were the least damaged were not fit for use, and those that were the most damaged were covered with a thick gummy substance, probably the result of action of creosote or from the smoke, I presume." On cross-examination, however, it developed that this witness had made several visits to inspect the damaged property.

He could not say that he had at any one time inspected as many as 100 lenses; but he gave no number definitely, but thinks he did handle as many as 100 on one occasion; would not go beyond that; couldn't say that he handled different lenses at different times; thinks that altogether he handled at least 700. It is not shown that he examined the lenses contained in the envelopes which had not been broken by or as a result of the fire, and no evidence was given which would justify the jury in finding that such were damaged, and a total loss of all the lenses was necessary to sustain the verdict. The general statement made by Mr. Agnew, as well as Mr. Riggs, that the work necessary to clean and separate the lenses would cost more than they were worth was not evidence, but simply the conclusion of the witnesses; and, in the face of the other testimony, we are convinced that, from the proof, the jury could not conclude that there was a total loss. That there was a fire is admitted. That there was damage is proved. But the amount of such damage was not shown. We do not mean to hold the plaintiff to the difficult task of inspecting carefully each of the 175,000 lenses; but an inspection of each box or envelope and a careful estimate of the damage is not unreasonable, and is a duty the plaintiff owes to itself, the defendant and the court. The trial was had in April, 1905, and since that time many months have elapsed. The interested parties have had their vacation, and the witness, Agnew, has had the opportunity to inspect his goods, and, presumably, may now give intelligent information as to the amount of the damage.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.