CARL JENSEN ET AL., APPELLEES, V. PALATINE INSURANCE
COMPANY, APPELLANT.

FILED APRIL 23, 1908.   No. 15,174.

1. Contracts: FORFEITURE: CONSTRUCTION. A clause stipulating for the
forfeiture of a contract should not be aided or given effect by con-
struction in a case where the plain meaning of the language used
does not require it.

2. Insurance: FORFEITURE: WAIVER. A stipulation for the forfeiture
of an insurance, policy is waived by conduct of the insurer in-
consistent with his right or intention to claim such forfeiture.

3. Evidence: OPINIONS OF WITNESSES: VALUE OF GOODS. Where the
value of a stock of merchandise is a relevant fact, and no more
accurate evidence is under the circumstances obtainable, the
owner of such stock and witnesses acquainted with the value of
the different articles of which it is composed, and who have
observed the same for the purpose of estimating the value thereof,
may give their opinion of such value.

4. Insurance: FALSE STATEMENTS: FORFEITURE. Where the value of
the goods destroyed is greater than the amount of insurance
thereon, such value is immaterial to the risk, and the making
by the assured, after loss, of an affidavit in which the value is
overstated will not constitute a defense to the action upon the
policy under a clause providing that the same shall be forfeited
in case of any fraud or false swearing by the assured touching
any matter relating to the insurance either before or after loss.
*Springfield Fire & Marine Ins. Co. v. Winn*, 27 Neb. 649, followed.

5. ———: EXAMINATION OF INSURED: WAIVER. The provision of an
insurance policy that the assured shall, in case of loss, submit to
an examination under oath by any person named by the insurer,
is waived by a denial of all liability under the policy and a fail-
ure to demand such examination until long after the commence-
ment of the action on the policy.

6. ———: PROOF OF LOSS: WAIVER: INTEREST. The provision in a
policy of fire insurance that the policy is payable 60 days after
due notice and satisfactory proofs of loss are made by the as-
sured and received by the insurer is waived by such action of the
insurer as waives proof of loss, and in such case interest should
be computed from the date of loss. *Hartford Fire Ins. Co. v.
Landfare*, 63 Neb. 559, followed.

APPEAL from the district court for Boone county: JAMES R. HANNA, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters,* for appellant.

*Charles B. Keller* and *M. W. McGan, contra.*

CALKINS, C.

The plaintiffs were proprietors of a general store at Bradish, a postoffice in Boone county, near Albion; their store being the only business house at that place. They were carrying insurance against loss by fire in the sum of $2,000, and on the 25th day of November, 1904, the defendant wrote its policy in the additional sum of $3,000 for the time of one year from said day, and on the 17th day of January, 1905, the store was destroyed by fire, only about $500 worth of goods being saved. The plaintiffs had no recent inventory, and the books and papers were destroyed in the fire. On the 1st day of February, 1905, the defendant's adjuster arrived, and, after the signing by one of the plaintiffs and the adjuster of what is called by counsel a nonwaiver agreement, interrogated the plaintiff Jensen as to the amount of his sales for the three years last preceding. The estimates of such sales, as made by Jensen, were put in the form of an affidavit, and the adjuster then requested, or at least suggested, that Jensen secure duplicate invoices, which he undertook to do, and employed an attorney to conduct a correspondence to that end. After writing numerous letters, but failing to hear from all the firms who had sold plaintiffs goods, and the amount of the goods shown by the duplicate bills actually obtained being considerably less than the estimate of Jensen, the attorney so employed by plaintiffs submitted the result of his labors to defendant's adjuster, who afterwards, on the 9th day of March, 1905, addressed to plaintiffs a letter notifying them that the defendant denied any and all liability under its said

policy. This action was commenced April 11, 1905, and a trial was had in October, 1906, resulting in a verdict for plaintiffs. Upon this verdict a judgment was afterwards rendered, from which defendant appeals.

1. There was attached to and made a part of the policy what is denominated "the iron-safe clause," which was in the words following: "Books and inventory to be kept, or insurance void. It is a continuing warranty on the part of the assured that an itemized inventory of the stock herein specified shall be taken at least once each year, and books of account showing all purchases and daily sales separately for cash and credit shall be kept, and said inventory and books of account shall be kept securely locked in a fire-proof safe within the building herein specified during the hours the building is closed for business, or said books and inventory, or itemized copy thereof, shall be kept securely locked up in a place (other than in said building), secured from being destroyed with the property herein specified. The failure to perform any of these conditions of insurance shall render this policy void. And it is hereby understood and agreed that no agent of this company shall have power to waive any of the foregoing conditions or warranties, except the same shall be in writing hereon or attached hereto." The plaintiffs had taken no inventory, and had no fire-proof safe. Their books of account, which seemed to have been kept in their store building, were destroyed by the fire. The fire did not, however, occur when the store was closed, and when the books were, by the clause above quoted, required to be locked in a fire-proof safe. It was contended by the defendant that the failure to take an inventory and keep it locked in an iron safe in the building was a breach of one of the conditions contained in this clause, which forfeited the plaintiffs' right to recover upon the policy. Upon this question the trial court instructed the jury that the plaintiffs had one year from the time the policy was issued to make the inventory. This, we think, was correct. If a party on a given

date stipulates to perform a specified act at least once in each year, and no date is fixed for its first performance, he cannot be said to be in default at any time before the end of that period. *Continental Ins. Co. v. Waugh & Son,* 60 Neb. 348; *Connecticut Fire Ins. Co. v. Jeary,* 60 Neb. 338; *Citizens Ins. Co. v. Sprague,* 8 Ind. App. 275. It is urged that under such interpretation the stipulation is valueless, because it makes it unnecessary for the assured to do what they had agreed until the expiration of their policy, but such is the plain meaning of the language, and we are not permitted to construe it otherwise, especially when the result would be to enforce a forfeiture. If the defendant is entitled to a forfeiture of the policy, it is because it is so denominated in the contract, and a clause calling for such forfeiture should not be aided or given effect by construction in a case where the plain meaning of the language used does not require it. *Continental Fire Ins. Co. v. Jeary, supra.*

2. It is contended by defendant that that part of the iron-safe clause which requires the books to be kept in the safe when the store is closed is independent of the clause requiring the inventory, and that, by plaintiffs' failure to so keep such books in such safe before the inventory was taken, their right to recover under the policy was forfeited. On the other hand, it is argued by plaintiffs that, since the only value, so far as the policy is concerned, such books of account could have would be to show the current increase and diminution of the stock, it was evident that their keeping should begin with the taking of the inventory, and that, therefore, there could be no default in the keeping of the books until an inventory which should furnish a starting point for them should be had, and this view is supported by the case of *Hanover Fire Ins. Co. v. Dole,* 20 Ind. App. 333. We do not find it necessary to determine this question. It appears that at the time of taking the policy defendant's recording agent, Mr. Brady, who wrote the risk, was fully apprised that the plaintiffs had no iron safe in their store, nor

safe place elsewhere in which to keep their books and papers, and for that reason Mr. Brady himself undertook to keep the policy for plaintiffs. Had Mr. Brady written such a policy himself as his own contract of insurance, and then undertaken to care for the policy because the assured had no place to protect it from fire, such act would have clearly been a waiver of the provision requiring the assured to keep his books in a fire-proof safe. When one in possession of any right secured by contract does something inconsistent with the existence of his right or with his intention to rely upon it, he is precluded from afterwards claiming anything by reason of it. Bishop, Contracts (2d ed.), sec. 792. This rule has by this court been often applied to contracts of insurance. *Billings v. German Ins. Co.,* 34 Neb. 502; *Home Fire Ins. Co. v. Phelps,* 51 Neb. 623; *Hartford Fire Ins. Co. v. Landfare,* 63 Neb. 559. In the case of a corporation, it is charged with notice of facts which were known at the time to its agent who had charge of the transaction. Cook, Corporations (5th ed.), sec. 727. This, too, has been by this court held to apply to notice received by recording agents of insurance companies while engaged in the business of their principal. *Eagle Fire Ins. Co. v. Globe Loan & Trust Co.,* 44 Neb. 380; *Home Fire Ins. Co. v. Bernstein,* 55 Neb. 260; *Hartford Fire Ins. Co. v. Landfare,* 63 Neb. 559. The court below took the view that, if these facts were true, they might constitute a waiver on the part of the defendant of this clause, and submitted the question to the jury on that theory. In so doing it committed no error of which the defendant can complain.

3. It is contended by the defendant that there was no competent proof of the value of the goods destroyed, and that, therefore, the verdict was not sustained by the evidence. The objections urged by the defendant seem to us to go to the weight of the testimony of the several witnesses, rather than to their competency. The plaintiff Jensen testified to the value of the goods. He had pur-

chased the same, they were in his personal charge, for a long time he had been selling from the stock at retail, and was undoubtedly competent to speak of the value of any particular article. In proving the value of personal property, it is usually held that the owner is allowed to estimate its value, whether he is qualified as an expert or not. 1 Wigmore, Evidence, sec. 716. In *Langdon v. Wintersteen,* 58 Neb. 278, complaint was made of the admission of the testimony of a witness as to the value of a stock of millinery goods; her only qualifications being that she had frequently priced and bought similar goods at retail, and knew their value in a general way. It was said by the court that this was sufficient; that the weight of her testimony was for the jury; and that no very precise or extended knowledge of values or articles in common use is essential to justify the trial court in admitting opinion evidence of this character. The three other witnesses who testified as to the value of this stock were traveling salesmen who frequently visited plaintiffs' store. One selling boots and shoes testified that he was there on December 23 or 24 last before the fire; that he was familiar with the value of the different kinds of goods carried in the stock; that it was part of his business to observe the amount and value of the stock on hand, and he was thereupon permitted to testify, and said that the value of the leather and rubber goods was not less than $3,000, and the whole stock not less than $8,000. A grocery salesman who had been selling such goods for 35 years, and making fortnightly visits to plaintiffs' store since 1903, testified that he was there the week before the fire, described the size of the store, the condition and the amount of the stock, and estimated the value of the class of goods sold by him at not less than $2,000, and the whole stock at $8,500. The remaining witness was a dry-goods salesman who had been visiting plaintiffs' store once in six weeks, and was sent there by his house December 15 to estimate the value of the stock. He had been in the dry-goods business for 26 years, and on this

visit went over the stock for the purpose of estimating the value of the same, and fixed that of the dry goods at $2,800; his estimate of the value of the whole stock being excluded by the trial judge. It seems clear to us that these witnesses were competent to give an opinion as to the value of the articles composing the stock; the real objection of the defendant being that they ought not to be allowed to estimate the quantity. Owners of stocks of goods are accustomed to form estimates of the value of a stock from a general inspection of its quantity and condition, and a comparison of its present appearance with its appearance at some former time 'when they had a more accurate knowledge of its amount and value. Commercial travelers are often charged by their employers with the duty of observing the quantity and condition of their customers' stock, and estimating the value thereof, and frequently acquire some proficiency in making such appraisements. While such estimates are not mathematically correct, they are often approximately so, and are of some value when no better information is to be had. We are of the opinion that where the value of a stock of goods is a relevant fact, and no more accurate evidence is under the circumstances obtainable, the owner of such stock and witnesses acquainted with the value of the different articles of which such stock is composed, and who have observed the same for the purpose of estimating the value thereof, may give their opinion of such value. *Howerton v. Iowa State Ins. Co.*, 105 Mo. App. 575, 80 S. W. 27; 4 Joyce, Insurance, sec. 3769. To otherwise hold would result in a denial of justice in many cases. Suppose the stock of goods had been destroyed by an incendiary against whom the plaintiffs had brought action to recover the value. Must the action fail because the plaintiffs could not furnish an itemized statement of the amount and value of their goods? The rule is not peculiar to cases against insurance companies, but in all cases the law requires, not mathematical certainty, but

37

merely the best obtainable under the conditions exist-
ing, and some reliance must be placed upon the integrity
and good faith of witnesses and discretion of juries. The
defendant insists that a different rule was adopted by
this court in *British-American Ins. Co. v. Columbian Op-
tical Co.*, 76 Neb. 812. In that case there was not a total
loss, the goods damaged consisting of 175,000 lenses,
which were more or less injured by being smoked and
stained. The only excuse for not proving accurately the
amount of loss in that case was the time and labor re-
quired to make a careful examination of the goods. In
holding the evidence insufficient the court say: "We
do not mean to hold the plaintiff to the difficult task of
inspecting carefully each of the 175,000 lenses; but an
inspection of each box or envelope and a careful estimate
of the damage is not unreasonable." It is very plain that
there is nothing in that case to sustain defendant's con-
tention, but that, on the contrary, it supports the doc-
trine we have above stated that only the best evidence
practicably obtainable is required. It is to be remem-
bered that the competency of a witness to testify as an
expert rests very largely in the sound discretion of the
trial court, whose rulings thereon will not be reversed un-
less clearly erroneous as a matter of law. *Missouri P.
R. Co. v. Fox*, 60 Neb. 531; *Omaha Loan & Trust Co. v.
Douglas County*, 62 Neb. 1. The witnesses practically
agreed in fixing the value of this stock at about $8,000,
and, as it was insured for but $5,000, the defendant could
not suffer unless its value was actually below the last
stated sum. We think that the evidence was not only
admissible, but that it was sufficient to fairly establish
that the loss was greater than the amount of the insur-
ance.

4. The seventh paragraph of the defendant's answer
was as follows: "Defendant further says that on Febru-
ary 1, 1905, the plaintiffs were making claim against this
defendant on the policy in suit, and its adjusting agent
was making an investigation under an agreement in wri-

ting with the plaintiffs that said investigation should be without prejudice to the rights of either party under said policy. And on said date the plaintiff Carl Jensen, of and for the firm of Jensen & Swan, made an affidavit sworn to before J. T. Brady, a notary public of Boone county, Nebraska, and gave same to the adjusting agent of this defendant, in which he made the following sworn statement: 'That during the year 1902 we (Jensen & Swan) sold goods to the amount of $18,000; during the year 1903 we sold goods to the amount of $20,000; and during the year 1904 we sold goods to the amount of $30,000; that our profits on goods sold amounted to 20 per cent.' Defendant further says that said statement in said affidavit was made for the purpose of furnishing the defendant with a basis for the computation of the amount of the plaintiff's loss; that said statement was false, and it was intended to deceive this defendant, and because thereof this defendant is not liable on the policy in suit." To this paragraph the plaintiffs did not reply, but interposed a general demurrer, which was not disposed of, and so admitted the truth of the allegations therein contained. The court instructed the jury that, if they found the value of the property exceeded $5,000, the amount of insurance resting thereon, then the facts alleged in this clause of the answer did not constitute a defense; but that, if they found the value of the goods less than $5,000, then these facts were a complete defense to plaintiff's action, and they should find for defendant. Whether this clause in the reply states facts sufficient to constitute a defense in any view of the case we will not consider. It is well settled that the making of an affidavit fixing the value of goods insured at an excessive price will not forfeit the right of the assured to recover where the value of the property actually exceeds the amount of the insurance, so that the same becomes immaterial to the risk. *Springfield Fire & Marine Ins. Co. v. Winn,* 27 Neb. 694; *Home Ins. Co. v. Winn & Co.,* 42 Neb. 331. As the defendant was given the full benefit of the admis-

sion of the facts contained in this paragraph of its answer, there is nothing of which it can complain in respect thereto.

5. The eighth paragraph of the answer, which was likewise demurred to, but not denied, by the reply, averred that on October 11, 1905, the defendant demanded that the plaintiffs appear and submit to an examination on oath "as required by the terms of the policy in suit," and that the plaintiffs failed and refused to submit to such examination. On this branch of the case the court instructed the jury that the failure of the plaintiffs to appear under this notice did not constitute a defense to plaintiff's action. The fire occurred January 17, 1905. The formal denial of liability by the defendant is dated March 9, 1905. This action was begun April 11, 1905, and defendant's demand for the examination was made just six months after the latter date. Defendant ought not to have the right to demand such examination after its formal denial of liability. *Home Fire Ins. Co. v. Fallon,* 45 Neb. 554. Besides, the delay of six months after the commencement of the action and seven months after such denial of liability is unreasonable. *Ætna Ins. Co. v. Simmons,* 49 Neb. 811. The judge of the district court was therefore right.

6. The court instructed the jury to compute the interest on the amount of the loss from the date thereof to October 2, 1906, the first day of the term at which the trial was had. An error was made by the jury in computing the interest, which was corrected by a remittitur filed by the plaintiffs in the court below, and judgment was rendered for the correct amount, computing interest at 7 per cent. per annum from the date of the loss to the first day of the term. The defendant contends that the interest should have been computed only from May 9, 1905, 60 days after the denial of liability. The instruction of the trial court is in conformity with the rule adopted by this court in *Hartford Fire Ins. Co. v. Landfare,* 63 Neb. 559, where it is distinctly held that the pro-

State v. Lincoln Medical College.

vision for 60 days' delay after proofs of loss are received is waived by a denial of liability, and that in such case interest is to be computed from the date of loss.

There being no error in the record, we recommend that the judgment of the district court be affirmed.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.