Samuel W. Eageb, J.
This decision follows a joint trial of an action brought by plaintiffs to declare their ownership of and rights with respect to a parcel of real property laid out on certain maps as a street, and to enjoin the defendant’s use of the same, together with proceedings brought by the defendant against the plaintiffs to condemn said parcel of real property, located in the Town of Greenburgh, New York.
The controversies here concern the alleged existence of a street, which defendant claims the right to use as a way for ingress to and egress from its school property. The alleged street is known as Second Street, and it lies between the homes of the plaintiffs. It is improved and paved at its northerly end where it enters a public through street, identified as Saratoga Avenue, which runs perpendicular thereto. Said Second Street is improved and paved for only approximately a distance of 100 feet from Saratoga Avenue, and is unopened for the balance of its alleged length to the southerly end thereof where it abuts the property line of defendant’s lands.
The defendant desires to improve and thereafter utilize said Second Street as a means of ingress and egress for its school, to and from said Saratoga Avenue, for the use of school busses and other school traffic. Defendant contends that Second Street is a public way, but submits that, if this fact be not confirmed by this court, it is entitled to condemn a right of way thereover. On the other hand, plaintiffs claim to own the fee of Second Street on which their homes abut, and insist that defendant has no rights or easement whatever therein; and they further contend that no present right exists in defendant to condemn a way over said street.
It appears from the record that the plaintiffs acquired their respective lands, which are residential lots, by conveyances containing a reference to a filed subdivision map designated as “ Subdivision Map, Section 2 of Alanwood Homes, Town of Greenburgh February 1, 1946” filed in the County Clerk’s office. Furthermore, the respective conveyances to plaintiffs set over unto them and duly vest in them title to the fee to center lines of the abutting streets shown on such map subject to the rights of other lot owners to use the same as streets.
*869 The defendant, in support of its contentions, takes the position that plaintiffs acquired title on the basis that Second Street was a public street; that plaintiffs and their predecessors in title have dedicated Second Street as a public road; and that there has been such public recognition of Second Street as to constitute the same a public highway. “ The general rule, however, seems to be that the platting of land and the sale of lots pursuant thereto constitute a dedication, if it may be so-called, of the public places delineated upon the plat only as between the grantor and purchaser, and that, so far as the municipality is concerned, such acts amount to a mere offer of dedication, and there is no complete dedication without an acceptance of some kind by the municipality.” (11 McQuillin, Municipal Corporations, § 33.45, and cases cited.)
Now, it does not appear here that the implied offer of dedication of Second Street flowing from the filing of the subdivision map has ever been accepted, formally or impliedly, by the municipal authorities. It is noted that the defendant does claim that it is to be inferred that the town has in effect accepted as a public highway said Second Street, as well as the other streets shown on the subdivision map of Alanwood Homes. As the basis of such claim, the defendant points to the following facts and circumstances, which are duly established, to wit: — (a) Second Street is shown upon the town assessment map and upon the master plan map of the town as a street; (b) it appears as an open street on the zoning map of the town; (c) it appears that the Commissioner of Public Works does plow the snow off the street; and (d) the end of the street for a short distance off Saratoga Avenue, and to the extent that it extends along plaintiffs’ lots is paved, but it does not appear whether the developer or the town paid for the paving thereof. It is to be noted, however, that the Commissioner of Public Works of the town testified that his department never did any work to repair or maintain Second Street, and that there has not been any vehicle passage over said street except for the cars of plaintiffs. In fact, the unopened end of the street abutting on defendant’s property was for some time fenced off to prohibit passage thereover to the property now owned by the defendant.
The foregoing facts and circumstances, while consistent with the prior acceptance by the town of Second Street as a public highway, do not establish such acceptance. The facts and circumstances do not show such assumption by the town of possession and control over the street as to support an inference that *870 the same has been accepted. The party setting up the acceptance of a street offered for public use has the burden of proving due acceptance thereof (see 26 C. J. S., Dedication, § 45, p. 495), and the defendant here has not sustained this burden. (See Goldrich v. Franklin Gardens Corp., 282 App. Div. 698 and cases cited. Also Sauchelli v. Fata, 306 N. Y. 123; Lynbrook Homes v. Frey, 217 App. Div. 164; Snyder v. County of Monroe, 2 Misc 2d 946.)
Nor does it appear that the defendant is possessed of a private easement entitling it to have the use of Second Street for its busses. The lots owned by plaintiffs were acquired as designated and numbered lots upon said subdivision map of Alanwood Homes. On the other hand, the defendant was not the purchaser of or owner of any property set out on such map. The property which the defendant owns was set out and delineated on another subdivision map, namely, the ‘ ‘ Map of the Mount Prospect Villa Association ” filed in Westchester County Register’s office in May, 1869. Said map is a map of a tract of land situate immediately to the south of and adjoining the tract covered by the subdivision map of Alanwood Homes. It is true that the two subdivision maps show Second Street as continuing or open from one tract to the other. Where, however, as here, the two subdivided and mapped adjoining tracts, showing streets running from one tract into the other, were not in common ownership at the times of the filing of the respective maps or the maps were not filed as a part of a common plan for the development together of the two tracts, a person acquiring a parcel in one of the tracts does not thereby become vested by implication with an easement of way burdening the adjoining tract. An easement to use streets shown on a tract subdivided and mapped to show streets is an easement implied by law to carry out the intention of the parties. (See Matter of City of New York [Northern Blvd.], 258 N. Y. 136,147, and cases cited.) Consequently, the easement to use streets shown on the map of a particular tract is deemed to exist solely in favor of purchasers of lands from the particular tract. On the face of it, the parties in their dealings and conveyances referring to such map and tract are deemed to have in mind the need, convenience and desirability of access to and from the lots which are shown on such map and which are a part of such tract; and an easement of way over the streets shown upon the map is not to be implied in favor of owners of property located beyond the limits of the tract except upon proof of facts and circumstances showing that it was so intended. (Cf. Sauchelli v. Fata, 306 N. Y. 123, supra.) Here, the defendant and its predecessors in title had access *871 to the public highway over streets laid out on the map of the tract on which defendant’s property is located, and there is nothing in the record to indicate that it was intended that they required or should have the use of streets shown on the map of the adjoining tract.
It is concluded that plaintiffs are owners of the fee of Second Street and entitled to possession thereof subject only to such easements of way as are possessed by the owners of other lots which are a part of the Alanwood Homes tract, and subject, of course, to the right of the proper municipal authorities to accept and take the same over as a public street. It is further concluded that defendant has no easement or other right to the use of said street. Consequently, an injunction does lie and defendant will be enjoined from passage thereover as well as from performing any work thereon. ■
By the condemnation proceedings brought by defendant school district which were consolidated with the action by plaintiffs for an injunction, the defendant seeks to condemn the fee of the said Second Street alleging that the public use thereof is required as an appurtenance to its school building, ‘ ‘ i.e. as a means of access thereto for its busses, utilities and other similar uses to which a means of access may be used, but primarily as a means of ingress to the school ”. The plaintiffs oppose the condemnation on the ground that necessary preliminary steps were not taken to authorize the condemnation proceedings; and the plaintiffs in particular claim that the Board of Education of defendant school district was not authorized to buy or condemn the subject property.
Now it is clear that authority of a Board of Education to acquire real property for school purposes must rest upon statutory provision. It has been held, as a general rule, that “ in the absence of legislative enactment vesting such authority, a school district has no authority to appropriate land for a street or alley purposes.” (78 0. J. S., Schools and School Districts, § 248, p. 1212.) The State Comptroller has rendered an opinion that a school district may acquire a strip of land for an “ access path ” which is necessary for ingress or egress from the school building site (13 Op. St. Comp., 1957, p. 90), but did predicate this opinion on the authority found in the Education Law (§ 416, subd. 1) relating to additions to school sites. It is to be further noted that the Education Law (§ 416, subd. 3) prescribes the procedure for voting upon an addition to a school site and that subdivision 6 of section 1709 of said law gives the board of a union free school district power to purchase additions which have been approved at a district meeting. Here, the defendant *872 concedes that it did not proceed in accordance with these provisions of the Education Law, maintaining that section 401 thereof gives the board the power to designate a school site without prior submission to the district electorate. But, condemnation or purchase of particular lands for school purposes, particularly where, as here, the fee is sought, involves more than mere designation of a school site or an addition to a school site, namely, the acquisition and the paying for the subject lands'; and the powers to be exercised by a condemnation proceeding cannot be characterized as the mere designation of a site as contemplated in said section 401. Steps in this connection are deemed governed by sections 416 (subds. 1, 3) and 1709 (subd. 6) of the Education Law, which sections have not been complied with here.
The defendant argues, in the alternative, that the original authorization for the construction of the school impliedly included authorization to acquire Second Street. However, the mere fact that Second Street appeared on plans, approved by the district and the Commissioner of Education, as a utility and vehicle access path, may not be construed as an indication of an implied authorization to purchase or to condemn the same as an access path. In fact, the defendant received its present site by gift, and it appears that at the time of the approval of the plans, those concerned were of the impression that Second Street was a public way. Certainly, the instant condemnation proceedings were not within their contemplation at the time of the original approval.
In any event, these condemnation proceedings must be dismissed because there was a failure on the part of the defendant to proceed in good faith to attempt to obtain the subject property by agreement with the owners. Such power to condemn property as exists in the school board is only exercisable “ if an agreement cannot be made with the owner for the purchase thereof ” (Education Law, § 404, subd. 2); and it is clear “ that a reasonable effort must be made in good faith to reach an agreement. A merely formal or perfunctory attempt to purchase is not sufficient to comply with the requirement of the statute ’ ’. (6 Nichols, Eminent Domain, § 24.621, and cases cited.) There was no evidence presented at the trial of any negotiations with the property owners for the purchase by the defendant of the subject lands. The defendant, merely, at the close of the case, requested that: ‘1 Will it he conceded that an offer of $100 to each of these people was made and refused prior to the institution of the condemnation proceeding ”, to which statement plain *873 tiffs’ counsel replied, “ Yes ”. The minutes of the school board meeting of July 7, 1959, reveal that it was “ recommended that the Board authorize the President to offer $100 to the owners of the street. If this offer is refused, we should proceed with condemnation proceedings ’ ’; and that a resolution in accordance with this recommendation was passed. Thus, the board took a perfunctory take it or leave it attitude without intending to negotiate in good faith for an agreement.
Now, it is to be borne in mind that plaintiffs are owners of the street bed as well as being owners of abutting lots and with ownership thus united, the title to the street bed may have substantial value (Matter of City of New York [Roosevelt Ave.], 186 App. Div. 457, and cases cited; City of Buffalo v. Pratt, 131 N. Y. 293; Matter of Northern Blvd., 232 App. Div. 830. Also Haggard v. Independent School Dist, of Algona, 113 Iowa 486). Therefore, a perfunctory nominal offer by the school board, such as was here made, may not be considered as a reasonable effort to reach an agreement with the owners.
The burden was upon the defendant to establish that it did make a bona fide but unsuccessful attempt to acquire the propérty by agreement as is required by statute, or that such an attempt would have been ineffectual if ma.de in good faith. The defendant has not sustained this burden. (See, for instance, New York Tel. Co. v. Wood, 145 Misc. 481, and cases cited; City of Long Beach v. Long Beach Water Co., 209 App. Div. 902.)
Defendant is hereby enjoined from any use of Second Street and the petitions for condemnation are denied without prejudice.
This shall stand as the decision of the court. Settle judgment on notice. Taxable costs allowed to plaintiffs.