STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE,
v. HARVEY MAHLOCH ET AL., APPELLANTS, IMPLEADED
WITH CLAUS SCHRUM, APPELLEE.

116 N. W. 2d 305

Filed July 13, 1962. No. 35130.

Eisenstatt & Lay, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, and A. A. Christensen, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This was a condemnation action brought by the condemner State of Nebraska, Department of Roads, to condemn certain lands to be used as a right-of-way for the interstate highway. The action was brought against the condemnees Harvey Mahloch, the owner thereof, and Alice Mahloch, his wife, who was joined because of her marital interest only, and Claus Schrum who had a mortgage thereon. The mortgagee has been paid the full amount of his mortgage and has no present interest in the action. The State of Nebraska, Department of Roads, will be referred to as the State or as condemner, and Harvey Mahloch and Alice Mahloch as the condemnees, and when condemnee is mentioned in the singular, it will refer to Harvey Mahloch.

The action was commenced in the county court of Douglas County, Nebraska, where the appraisers awarded the condemnee $29,447. The State appealed to the district court for said county. A trial to a jury resulted in a verdict of $22,479, upon which judgment was entered. Condemnees' motion for a new trial being overruled, they have brought the matter to this court on appeal.

At the trial of the case in district court the condemnees filed an amended and substituted answer which, in addition to a general denial and setting out certain allegations concerning value of the premises condemned, contained a denial that the State had attempted to agree with the condemnees by making a good faith offer and a reasonable attempt to induce the condemnees to engage in settlement negotiations and to accept such offer; and alleged that it had failed to negotiate in good faith, and set out for that reason the proceeding was void. On December 27, 1960, condemner filed a reply in the nature of a general denial to the allegations of the amended answer. Thereafter, condemner, on March 9, 1961, filed an amended reply to this same answer in which it was stated that the condemner in preparing for trial had ascertained that while negotiations were had, such do not appear sufficient to meet the requirements of law to vest the court with jurisdiction and that the whole proceeding should be declared void. It prayed for a dismissal without prejudice to the institution of further negotiations and proceedings; and that $14,000 already withdrawn by condemnee, under order of court pursuant to stipulation, be credited on any new award.

On March 13, 1961, the condemner made a motion to withdraw its amended reply and that the original reply of the condemner be reinstated. A hearing was had on the question of withdrawal of the amended reply, at the conclusion of which the trial court permitted its withdrawal and the reinstatement of the original.

It was thereupon stipulated by the parties that the issue of fact as to whether or not there had been a bona fide attempt to negotiate with condemnee and that issue only be submitted to the court without the intervention of the jury. A trial followed in regard to this issue before the court which held that an offer by condemner had been made in good faith and that there had been a bona fide attempt to agree. It found against the con-

demnee and refused to dismiss the proceedings.

A trial to the jury on the question of the amount of damages followed on March 14, 1961, with the verdict and judgment heretofore set out.

The condemnee maintains the trial court erred in permitting the State to withdraw its amended reply to the amended and substituted answer; in not dismissing the State's petition by reason of its filing the amended reply; in not finding the State failed to prove that it had negotiated with the condemnee prior to instituting the action; in instructing the jury that the condemnee had the burden of proving the value of the land condemned; in not admitting certain evidence of two sales of land offered by the condemnee; and in permitting the State's witnesses Grant Miller and Wayne Selby to introduce evidence of sales of other real estate and the sale prices thereof.

The condemner by this action took 9.94 acres of land out of a larger tract of 19.36 acres for the right-of-way of the interstate highway. The northern portion of the premises through which the main highway passed diagonally consisted of a rectangular tract of land approximately 850 feet east and west by 800 feet north and south. The southern portion was also a rectangle which adjoined the first premises at the northeast corner and extended west 450 feet along the south line of the first and south 500 feet, except there had been deeded off by condemnee's predecessor a tract of land 150 feet square in the southeast corner of the southerly portion upon which a filling station had been built. The south side of the condemnee's premises, as well as the filling station property, abutted Pacific Street extending from Omaha, Nebraska. The east line of the premises was on the section line on which One Hundred Eighth Street is located, but that street did not go through to Pacific Street either from the north or south and there was no cross street at this location. An access road connecting Pacific Street with the interstate highway took approxi-

mately 52 feet off the extreme south end of condemnee's premises abutting Pacific Street. The taking left 3.35 acres on the northwest corner of condemnee's premises with no present access, and 6 acres on the south side with access to Pacific Street restricted to one 20-foot entrance.

The action of the trial court in permitting the State on its motion to withdraw its amended reply and to reinstate the original was made after a hearing in which testimony was taken. The witness for the State in this instance was Roy Karr who testified that he was a buyer for the highway department during the times concerning the negotiations. He had been directed to buy certain real estate in connection with building the interstate system, including the condemnee's property. He went upon the property in question. He talked to Quinten Mahloch, condemnee's brother who lived nearby and learned from him that condemnee lived near DeWitt, Nebraska. He went to DeWitt to contact condemnee, taking an offer to purchase the property and the plans to show him. He also had a contract for condemnee to sign. He encountered condemnee in the hayfield about 3 or 4 miles from DeWitt and visited with him. In the month before trial he had been around Minden and Hildreth, Nebraska, and had had no opportunity to confer with the attorney who was to try the condemnation suit. Shortly before the hearing the attorney called him by telephone and they discussed the case. The witness informed the attorney that he had made the condemnee an offer. After this showing the condemner was permitted to withdraw the amended reply and reinstate the original one. Section 25-852, R. R. S. 1943, reads as follows: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect,

or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. Whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment." It is the contention of the condemnee that this section does not permit the amendments which were permitted by the court in the instant case because it changed substantially the claim or defense and that the wording of this section prevents such changes. As we read this section, the words "when the amendment does not change substantially the claim or defense," is further modified by the remaining portion of the sentence which reads, "by conforming to the pleading or proceeding to the facts proved." These two portions of the quoted section clearly refer to amendments made after trial, and not those before.

In Kleinknecht v. McNulty, 169 Neb. 470, 100 N. W. 2d 77, the questions involved in amending pleadings were considered and the cases of this court were there reviewed. The court in that case held: "The law of amendments should be liberally construed in order to prevent a failure of justice. Changes in judicial procedure have not altered the rule, nor indicated any reason for discontinuing its judicial application." In the cited case the court, in discussing section 25-852, R. R. S. 1943, further stated: "Defendants here invoke the rule relied on in Robinson Outdoor Advertising Co. v. Wendelin Baking Co., 145 Neb. 112, 15 N. W. 2d 388, that an amendment to a pleading may be made, which does not change the issues or affect the quantum of proof as to a material fact, at any stage of the proceeding.

"The rule is a permissive one. It defines one circumstance under which an amendment may be made at any stage of the proceedings. It does not hold that amend-

ments, after answer is filed, may be made only if they do not change the issues nor affect the quantum of proof as to a material fact.

"In the Robinson case the proposed amendment to the answer was offered while evidence was being received and for the purpose of conforming the answer to the proof."

In the case before us the withdrawal of the amended reply and the reinstatement of the original one was made in open court in the presence of opposing counsel after a showing that counsel for condemner had learned that the representative of the State had interviewed and made an offer to the condemnee. It was further shown that the condemner's attorney who tried the case had just learned of the facts which justified the change in the pleadings. The attorney who tried the case in this instance was not the one who filed the petition in the district court or the original proceedings in the county court. We find that the district court committed no abuse of its discretion and hence there was no error in permitting the withdrawal of the amended reply and the reinstatement of the original.

The condemnee contends in his next assignment of error that the action should have been dismissed because of the admissions which were made in the amended reply. This was apparently based on the hope that this court would not sustain the trial court in permitting the withdrawal of the amended reply. Having held that the trial court committed no error by permitting the withdrawal, the matters pleaded in the amended reply were no longer judicial admissions because they were not a part of the pleadings upon which the action was tried. It thereafter became, at most, merely an item to be considered with all the evidence with respect to the sufficiency of the negotiations between the condemner and condemnee.

The issue of fact as to the sufficiency of the negotiation involving the offer of the condemner made to the

condemnee was heard by stipulation of the parties to the court alone without a jury. Karr who carried on the negotiations with condemnee further testified that on this occasion he contacted and talked with the condemnee in the hayfield near DeWitt where he told the condemnee that the State wanted to purchase the land. Karr had with him a small plan of the area the State desired to purchase and he had a contract that condemnee could sign for the purchase of the premises. Karr was prepared to close the transaction if the condemnee would have agreed. They visited for some time. Karr offered condemnee $16,600 for the land involved and told him it was based on an appraisal given to him by the Department of Roads. The condemnee refused the offer. Thereafter, on September 16, 1958, the condemner wrote a letter to the condemnee which he received, stating that he had already been advised by Karr of the State's desire to purchase the premises, describing them; and that Karr had attempted to purchase it but no agreement could be reached. The State made a final offer to condemnee to purchase the premises for $16,600. Contracts for the sale to be signed were enclosed with directions as to signing and forwarding copies thereof. It ended by requesting he reconsider the offer and forward an executed contract, otherwise condemner would consider it necessary to secure title by eminent domain. Condemnee did not accept the State's offer, either in the field to Karr or by answer to the letter, nor did he make any counter-proposition at all.

The provisions of law setting forth the duty of the State towards the owners of lands which are to be acquired for public purposes, such as in the instant case, are set out in section 76-704, R. R. S. 1943. This section merely states that if the condemner shall fail to agree with the condemnee with respect to the acquisition of the premises, condemnation proceedings may be filed. It is not necessary that extended negotiations transpire.

An offer was made to purchase and it would appear to have been made in good faith and honesty. A reasonable bona fide attempt to have it accepted appears to have been made. Condemnee made no attempt to further negotiate. The trial court, then acting in place of a jury, found the offer sufficient. It appears to be sufficient under the rulings of this court. In Higgins v. Loup River Public Power Dist., 159 Neb. 549, 68 N. W. 2d 170, this court said: "In order to satisfy statutory requirement of attempt to agree with the owner prior to the institution of condemnation proceedings, there must be a good faith attempt to agree, consisting of an offer made in good faith and a reasonable effort to induce the owner to accept it."

The condemnee's assignment that the trial court erred in its instructions to the jury which placed the burden of proof on the condemnee as to his damages suffered by the taking cannot be sustained. The correct rule with respect to the burden in such cases is set out in Twenty Club v. State, 167 Neb. 37, 91 N. W. 2d 64, in these words: "The general rule in condemnation cases is that the burden of showing the damages which the landowner or lessee will suffer rests upon him while the burden is on the condemner to show matters which tend to reduce or mitigate damages." There was no error in the trial court's ruling.

The next exception to the trial court's ruling which condemnee assigns as error consists of excluding certain evidence with respect to the sale price of other lands on objections thereto. Errors are assigned with respect to two such rulings. The first is in regard to the refusal to accept exhibit 15, a certified copy of a deed from Quinten R. Mahloch, the brother of the condemnee, to one Samuel N. Wolf, and other evidence of the brother who offered testimony in regard to the sale price involved in this transaction. The sale was of a tract adjoining the condemnee's land. Previously, the brother who testified had owned both the condemnee's

land and the portion sold off the larger tract by the deed to Samuel N. Wolf. The sale, which was excluded from evidence, involved a small tract which aside from a portion occupied by the roadway was 150 feet square. It was bought for the purpose of erecting a filling station thereon. The sale took place in October 1956. At that time there were no zoning regulations covering the property in the locality where it or the condemnee's land lay. In September 1958, when the taking in condemnation occurred, there were zoning regulations in the area preventing the use of the land taken for any commercial purpose. The plot sold to Wolf abutted Pacific Street. There was considerable evidence by witnesses for the condemnee that the zoning regulations on application might be changed without difficulty to allow commercial development, and other testimony that other owners might object to such rezoning and changes which might be difficult or impossible to be made. In any event the zoning regulations prohibited commercial building at the time of the condemnation and under the circumstances there was nothing to show that the remaining 277.2 feet of the condemnee's land which abutted Pacific Street could be used for any commercial purposes. In Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209, this court said that: "The adaptability for uses which may be considered must be so reasonably probable and so reasonably expected in the immediate future as to affect the reasonable market value of the land at the time the land is taken or damaged." We cannot say that the trial court erred in excluding evidence of the sale price of this relatively small tract sold for a specific purpose when the evidence showed that at the time of condemnation similar commercial uses of condemnee's land were not available.

The other testimony in regard to a sale sought to be admitted by condemnee, which the court finally excluded after first receiving it, related to a tract of 11⅓ acres which adjoined the condemnee's land to the

east. The date of the sale was December 29, 1959, or 15 months after the condemnation. The interstate highway was then built or being built. The exhibits previously introduced show that an entrance and exit to Pacific Street was but a short distance from the land so sold. The condemnee's witness did not testify as to the condition of the zoning at the time this subsequent sale was made. It was not shown whether or not it was sold for a specific purpose. The witness had talked to the seller but not to the purchaser and had not ascertained the intended use. The condemnee's witness admitted that the impact of the building of the interstate highway with its access road connecting with Pacific Street, on which this land had a considerable frontage, had changed the condition although the witness testified it was hard to say whether it had changed for the better. The condemner's attorney argued that the conditions shown after the condemnation could not be shown because it would not have been possible for the condemnee or prospective purchasers of his land to be influenced in the value and price to be paid therefor by events which might occur in the future. Neither did the condemnee's witness who testified in regard to this particular sale give any measure or scale which the jury might have used in relating the value of condemnee's land at the time of the taking to this particular sale, though the witnesses admitted that the value of the land had risen in a considerable amount between the time of the taking and the later sale. Without holding that sales subsequent to the taking cannot be shown in the proper instance, we find that the exclusion of this sale under the circumstances and with the changed condition without any rule to relate the change in value to the time of the taking of condemnee's land was a matter within the sound discretion of the court. In Timmons v. School Dist., 173 Neb. 574, 114 N. W. 2d 386, this court held: "Whether evidence of an offer to sell is too remote in time to be admissible is for the trial court

to determine in the exercise of a sound discretion."

We now come to the last assignment of error which involves the reception of evidence of the witnesses for the State, Grant Miller and Wayne Selby, concerning sale prices of certain lands within the area of that of the condemnee. The assignment of error itself does not point out the particular sales in the testimony given, to which the condemnee objects. However, most of these sales are discussed in the condemnee's brief either in the evidence or argument. The testimony of the witnesses Grant Miller and Wayne Selby, who offered the evidence concerning the other land sold and the sale price thereof, includes several sales. The condemnee's brief says there were at least eight. The exact number depends on whether certain sales which appear to be made about the same time by the same parties, or one of them, in what would appear to be an effort to assemble a larger tract from several small ones, are to be considered as one or several sales. If every separate sale is considered there are more than eight.

The objections with respect to these sales are to the price of the land being given to the jury. Every objection, except in one instance, is confined entirely to that of no sufficient foundation laid. In that one instance the objection was finally sustained. This opinion would be unnecessarily and unjustifiably lengthened if we were to take up the several sales and the evidence concerning each in respect to foundation. We have carefully looked over the testimony of these witnesses who were fully qualified as real estate dealers, familiar with the area, and well versed in matters affecting land such as this with respect to its adaptability to suburban development and its location with reference to the growth of the city. In each instance they compared the land involved in the separate sales to that of the condemnee. The dates of the independent sales were given. A map was introduced in evidence showing the area west of Omaha in the vicinity of the plaintiff's land and showing

the principal streets leading westward from the city as well as the cross streets. The condemnee's land was located by markings thereon and most at least of the lands so sold and used in comparison were likewise located and marked thereon. Testimony in each instance was given as to its comparison with the land taken. In some instances the evidence was more detailed and extensive than in others. In addition to the testimony involving the particular tract separately, each witness when first questioned set out in considerable detail what was done by him to familiarize himself, not only with the condemnee's land, but those used in comparison and some of the things which he thought justified their comparison. When the testimony as to the particular tracts is considered with the general statements in regard to matters considered in making the comparisons, the foundation appears to be quite adequate. Indeed that given as to the separate tracts appears to be sufficient as to the character of the land, the date of the sale, and that it was bona fide between the buyer and seller.

The condemnee objects particularly as to the dates of the comparative sales which he contends were too remote. There are peculiar issues in the case that seem to justify the State in introducing evidence of sales over a more extended period than in a usual case in order to present its contentions to the jury. A witness on behalf of condemnee had previously testified that within a week or 10 days after the announcement on March 1, 1956, that the Western Electric Company plant was coming, land doubled in value almost overnight, and that the land in question upon which a filling station had been built was worth three times as much as before. The witness later testified that condemnee's land and surrounding property almost doubled or tripled in value overnight, and that this was the effect on all property from Ninetieth Street out as far as· One Hundred Fifty-sixth Street in the western part of the Omaha vicinity

and was not confined to the land adjacent to the Western Electric Company plant. The condemnee's witness Wear testified the market changed with the announcement of the Western Electric Company plant and that it came as a complete shock.

The State's witnesses admitted a rise in real estate values in the vicinity but maintained it was not nearly as rapid as claimed by those of the condemnee. In certain instances where other land was compared and its value was given as of 1956, the witness testified that the values in the area were then advancing 2 percent a month and that this fact was taken into consideration by the witness when he gave his opinion as to the value of the condemnee's premises. The witness Selby testified he kept records of all sales in his office and verified them from the public records. Further he said that in studying the sales in the area for a considerable time he had concluded that there was very little increase in the value of land from 1954 to 1956, but that in 1956, 1957, and 1958, there was a constant rise in the selling price of land determinable by these sales and that the rate of increase could be projected therefrom. That the rate of increase was 1¼ percent per month from 1956 to 1957, and starting in 1958, it went up 2.4 percent each month. With this yardstick before it the jury was given the sale price of the lands compared by the witnesses during the period, some going back to the year 1954. The two theories were presented to the jury, the one that on the coming of the Western Electric Company plant the land values had suddenly risen two or three-fold, the other of steady but less pronounced raise. Under the circumstances of the two conflicting theories presented by the parties we cannot say the trial court abused its discretion in admitting the sale price of other lands compared by the witnesses during the whole period. The jury was given the conflicting evidence, both on this issue and that as to the adaptability of condemnee's land to commercial or residential development. It was al-

lowed thereafter to view the premises when it had these issues all before it. It was the exclusive judge of the evidence as to value. The questions of admission of the sale prices of other land and the sufficiency of the foundation for their admission were within the sound discretion of the court. Timmons v. School Dist., *supra*. We find no error of the trial court in the admission of the evidence concerning the other land and the sale price thereof.

The several errors assigned to the rulings of the trial court cannot be sustained and it follows the judgment should be affirmed.

AFFIRMED.