**Frank T. KERR, Plaintiff,**

**v.**

**Dallas P. RANEY, Leon B. Catlett, Howard Horst, John L. Wilson, Roy C. Ritter, R. E. Wilson, III, Dr. P. L. Hathcock, Fred M. Pickens, Jr., George R. Shankle and G. Thomas Eisele, as Members of the Board of Trustees of the University of Arkansas; and David W. Mullins, as the President of the University of Arkansas, Defendants.**

**No. F–69–C–13.**

United States District Court
W. D. Arkansas,
Fayetteville Division.

Nov. 12, 1969.

Murphy & Carlisle, Fayetteville, Ark., for plaintiff.

Putman, Davis & Bassett, Ray Trammell, Fayetteville, Ark., for defendants.

## OPINION

JOHN E. MILLER, Senior District Judge, sitting by designation.

This is an action by which plaintiff seeks to enjoin the Board of Trustees of the University of Arkansas from condemning certain property owned by him in Fayetteville, Arkansas, and seeking damages allegedly caused by the failure of the Board of Trustees to negotiate with plaintiff in good faith. Defendants have filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, alleging that the court is without jurisdiction of the defendants and of the subject matter of the action, and that the complaint fails to state a claim upon which relief can be granted.

Rule 12(d), Fed.R.Civ.P., clearly contemplates a preliminary hearing and determination of jurisdictional issues in advance of trial unless the trial court defers such action until the time of trial. See 2A, Moore's Federal Practice, ¶ 12.16. Moreover, there is no statutory direction for procedure upon an issue of jurisdiction, and the mode of its determination is left to the discretion of the trial court. Gibbs v. Buck (1939), 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Schramm v. Oakes (10 Cir. 1965), 352 F.2d 143; Ziegler Chemical & Mineral Corp. v. Standard Oil Co. of Cal. (D.C. Cal.1962), 32 F.R.D. 241. The determination of the issue of federal jurisdiction may be made upon affidavits or other documentary evidence, or upon oral testimony. Gilbert v. David (1914), 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360; Broadstone Realty Corp. v. Evans (S.D. N.Y.1962), 213 F.Supp. 261; Dr. Beck & Co. G.M.B.H. v. General Electric Co. (S.D.N.Y.1962), 210 F.Supp. 86, aff'd (2 Cir. 1963) 317 F.2d 538; Metropolitan Sanitary Dist. of Greater Chicago v. General Electric Co. (N.D.Ill.1962),

208 F.Supp. 943; Kantor v. Comet Press Books Corp. (S.D.N.Y.1960), 187 F.Supp. 321. Accordingly the court held hearings on the jurisdictional issue on October 30 and November 5, 1969, and received both documentary and testimonial evidence.

■ Ark.Stat.Ann. § 80–3318 (1967 Supp.) grants the University of Arkansas Board of Trustees the right and power of eminent domain to condemn property whenever and wherever the acquisition of property is necessary for the use of the University. It is therein provided, however, that before the power is exercised in any case, the Board of Trustees shall exercise every reasonable effort to obtain the property in question at a reasonable price by negotiation. Thus, there is implicit in the statute the requirement that the Board of Trustees negotiate in good faith, once it has made the determination to acquire particular property. The defendants agree, but contend that this court is powerless to remedy any breach of duty by the Board of Trustees, as a suit against the Board of Trustees of the University of Arkansas is, in effect, a suit against the State of Arkansas, which enjoys constitutional governmental immunity from suit in her own courts. Arkansas Constitution, Art. 5, Sec. 20; State Comm'r of Labor v. U. of Ark. (1966), 241 Ark. 399, 407 S.W.2d 916. The defendants are correct in that, insofar as the Trustees have acted in their official capacity and within the law, this court is without jurisdiction of the action. However, an illegal act on the part of a state official or employee, committed on behalf of an agency of the state, is not protected from suit by governmental immunity. If the defendants have breached an express or implied statutory duty or otherwise exceeded or abused their discretion, such action is *ultra vires* in nature, and the court may afford proper equitable relief.

In Shellnut v. Arkansas State Game and Fish Comm. (1953), 222 Ark. 25, 258 S.W.2d 570, a suit to enjoin the enforcement of a regulation of the Arkansas State Game and Fish Commission, the Arkansas Supreme Court set forth the general rule at 222 Ark. 31, 258 S.W.2d 574:

"When a State Agency acts illegally, it is subject to be restrained by suit in equity. Federal Compress & Warehouse Co. v. Call, [221] Ark. [537], 254 S.W.2d 319. In Jensen v. Radio Broadcasting Co., 208 Ark. 517, 186 S.W.2d 931, 932, we said:

" 'The general rule of equity jurisdiction in suits to restrain acts of public officers is stated in 28 Am. Jur. 356, as follows: "There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are *ultra vires* and beyond the scope of their authority, outside their jurisdiction, unlawful or without authority, or which constitute a violation of their official duty, whenever the execution of such acts would cause irreparable injury to, or destroy rights and privileges of, the complainant, which are cognizable in equity, and for the protection of which he would have no adequate remedy at law. An injunction to prevent an officer from doing that which he has no legal right to do is not an interference with his discretion." ' "

See also Ottinger Const. Co. v. Blackwell (E.D.Ark.1959), 173 F.Supp. 817; Federal Compress & Warehouse Co. v. Call (1953), 221 Ark. 537, 254 S.W.2d 319.

It is conceded that the Board of Trustees has made the necessary determination to acquire plaintiff's property located adjacent to the University of Arkansas campus. The issue of the court's jurisdiction thus depends upon whether the Board of Trustees, through its agents, has exercised good faith, as

required by statute, in negotiating with plaintiff.[1]

It appears that the Board of Trustees began formulating plans for acquiring portions of plaintiff's property in late 1966, as part of the overall plan of the University for expansion and development. The certified minutes of the Board meeting held on November 11, 1966, reveal that the University administration was then given authority to select the property needed, obtain an appraisal of its value, and negotiate for its purchase. In addition, the Board determined to condemn the property needed in the event negotiations failed. The minutes of a meeting held on January 27, 1967, reflect the desire of the Trustees that land including plaintiff's property be given first priority. Late in February 1967 Dr. David W. Mullins, the President of the University, arranged a conference with plaintiff's son, Frank L. Kerr, during which the younger Kerr was informed by Dr. Mullins that the University wanted to purchase plaintiff's property but would condemn it if necessary. Part of plaintiff's property contains rental houses and an apartment complex is located on another portion. Plaintiff's son was informed that, while the University desired to eventually purchase all of the property involved, financing was then available only for the purchase of the rental houses. No firm offer was made at this initial conference. Plaintiff and Frank L. Kerr then employed a local realtor to conduct further negotiations in their behalf with the University administration in an effort to secure an offer on all of the property and to discover approximately when condemnation proceedings could be expected. Plaintiff desired to dispose of all of his property in the area of proposed expansion at the same time or not any of it. On March 9, 1967, plaintiff's representative met with University officials and conveyed plaintiff's offer to sell both the house and apartment property for a total of $600,000, or to sell only the rental houses for $210,000. The University officials were noncommittal, and negotiations temporarily lapsed. Shortly thereafter, the administration, pursuant to the authorization granted by the Trustees, secured two independent appraisals of plaintiff's property, and in a letter dated June 19, 1967, offered $114,600, the higher of the two appraisals, for the property on which the rental houses are located. This offer was refused on June 21, 1967, in a letter from Frank L. Kerr. On July 6, 1967, after reviewing the appraisals, Dr. Mullins wrote Frank L. Kerr, requesting that the Kerrs review their position and respond to the University's offer. Mullins also offered to meet with the Kerrs at their convenience and discuss the matter. Neither plaintiff nor Frank L. Kerr replied to this letter. The realtor representing the Kerrs again met with administration officials in October 1967 in an effort to break the impasse, but received the distinct impression that the administration preferred dealing with the Kerrs, and this phase of the negotiations also proved fruitless.

Early in 1968, a certified public accountant in the employ of plaintiff also conducted rather indirect negotiations with administration officials. As a result, Dr. Mullins again wrote plaintiff on March 29, 1968, and offered to discuss the purchase of plaintiff's apartment property. Neither plaintiff nor Frank L. Kerr replied, but the apartment property was thereafter appraised, with plaintiff's permission, by two independent ap-

---

1. Although the decision of the court today renders moot the question of plaintiff's compensable damages to date, it would appear that, apart from the good faith requirements of Ark.Stat.Ann. § 80-3318 (1967 Supp.), any serious interruption of the common and necessary use of plaintiff's rights of ownership without just compensation therefor would invoke the provisions of the Arkansas Constitution, Art. 2, § 22. Shellnut v. Ark. State Game & Fish Comm. (1953), 222 Ark. 25, 258 S.W.2d 570. It seems clear that it is unnecessary that the property be completely taken in order to claim constitutional protection. Id.

praisers. On July 27, 1968, administration officials did confer with plaintiff and Frank L. Kerr and orally offered a total of $451,700 for all of the subject properties. Plaintiff replied that he would be willing to consider the offer if $100,000 were added to it. The negotiations again broke down, but plaintiff requested that the administration confirm its offer in writing. Dr. Mullins did so in a letter to plaintiff dated August 1, 1968, to which he requested a response. Neither plaintiff nor Frank L. Kerr replied, and on December 5, 1968, Dr. Mullins again wrote plaintiff, indicating that condemnation proceedings would be instituted in the near future if plaintiff failed to respond to the administration's offer of July 27, 1968. The only written offer made by plaintiff was transmitted in a letter to Dr. Mullins from plaintiff's attorneys dated June 6, 1969. It was therein indicated that plaintiff's property had been examined by two professional appraisers, with the result that plaintiff authorized an offer of $550,000 for all of the property in question. In addition, plaintiff's attorneys implied that appropriate legal action would be instituted if the matter were not settled by July 1, 1969. No representative of the Board of Trustees responded, and the present action was begun on July 22, 1969.

■ Several jurisdictions other than Arkansas have granted the power of eminent domain subject to the condition that the required land cannot be obtained by purchase. See generally 6 Nichols, Eminent Domain, §§ 24.62–24.621 (Rev. 3d Ed. 1965). In such a case it is usually held that, unless there is a bona fide attempt on the part of the condemnor to induce the owner to sell the land at a reasonable figure, the condition under which the power is granted is not fulfilled, and any attempted exercise of eminent domain is unauthorized and void. Koch v. Oklahoma Tpke. Authority (1953), 208 Okl. 556, 257 P.2d 790; Pete-Rae Dev. Co. v. State (Tex.Civ.App.1962), 353 S.W.2d 324; State ex rel. State Highway Commission v. Cady (Mo.App.1963), 372

S.W.2d 639; Parish of Lafayette, etc. v. Hernandez (1957), 232 La. 1, 93 So.2d 672; McGee v. City of Williamstown (Ky.1957), 308 S.W.2d 795; Welch v. City & County of Denver (1960), 141 Colo. 587, 349 P.2d 352.

■■ While a merely formal or perfunctory attempt to purchase does not amount to compliance with the statute, State ex rel. Rich v. Bair (1961), 83 Idaho 475, 365 P.2d 216; Golowich v. Union Free School Dist. No. 8 (1960), 25 Misc.2d 867, 206 N.Y.S.2d 439; Brinton v. Houston Lighting & Power Co. (Tex.Civ.App.1943), 175 S.W.2d 707, prolonged negotiations are unnecessary, State Department of Roads v. Mahloch (1962), 174 Neb. 190, 116 N.W.2d 305; Moore Mill & Lumber Co. v. Foster (1959), 216 Or. 204, 336 P.2d 39, 337 P.2d 810; W. T. Waggoner Estate v. Townsend (Tex.Civ.App.1929), 24 S.W. 2d 83, and compliance is generally had when the negotiations have proceeded sufficiently to demonstrate that agreement is impossible. Vivian v. Board of Trustees of Colorado School of Mines (1963), 152 Colo. 556, 383 P.2d 801; County Board of School Trustees v. Boram (1962), 26 Ill.2d 167, 186 N.E.2d 275; Delfeld v. City of Tulsa (1942), 191 Okl. 541, 131 P.2d 754, 143 A.L.R. 1032; Jones v. City of Mineola (Tex. Civ.App.1947), 203 S.W.2d 1020; Dillon v. Davis (1960), 201 Va. 514, 112 S.E.2d 137. It also seems clear that the requisite impossibility of agreement may result from the owner's willingness to sell only at a price which the condemnor deems excessive. City of Cincinnati v. Home Fed. Sav. & Loan Ass'n (1967), 10 Ohio Misc. 291, 225 N.E.2d 293; County Board of School Trustees v. Batchelder (1955), 7 Ill.2d 178, 130 N.E.2d 175; Wampler v. Trustees of Indiana University (1961), 241 Ind. 449, 172 N.E.2d 67, 90 A.L.R.2d 204; W. T. Waggoner Estate v. Townsend, supra. It has in fact been held that if it becomes apparent that no agreement can be made at a price satisfactory to the condemnor, the effort to agree may be dropped. Wolfe v. State Dep't of Roads (1965), 179 Neb.

189, 137 N.W.2d 721; City of Cincinnati v. Home Fed. Sav. & Loan Ass'n, supra; Stanpark Realty Corp. v. City of Norfolk (1958), 199 Va. 716, 101 S.E. 2d 527.

 In light of the above cited decisons, it seems clear to the court that the defendant Trustees have at least demonstrated minimum compliance with the good-faith requisites of the statute. While it is true that the defendants never raised their original offer made on July 27, 1968, administration officials did on at least one occasion offer to arrange the manner of payment to provide tax advantages to plaintiff, thereby indirectly increasing the net payment. Such an arrangement is, of course, quite commonplace, but it does indicate a disposition on the part of defendants to accommodate plaintiff. Moreover, it simply cannot be said that any delay in negotiations to date has been deliberately caused by defendants. On four separate occasions, covering almost two years in the period of negotiations, plaintiff has failed to respond to written inquiries from Dr. Mullins requesting a reply and inviting negotiations. More important, defendants did not receive a counteroffer based on appraisals from plaintiff for more than two years after negotiations had begun. If bad faith has tainted the negotiations to date, the fault lies primarily with plaintiff. Accordingly, the court holds that the defendants have negotiated with plaintiff in good faith as required by statute and have, therefore, acted entirely within the law.

The court is, however, somewhat troubled by part of the testimony of Dr. David Mullins. In response to a question by plaintiff's attorney as to when the defendants planned to institute condemnation proceedings, Dr. Mullins replied that the Board of Trustees would have already done so had plaintiff not filed the present action. The court is at a loss as to what possible connection the pendency of this action may have with the failure of the defendants to attempt condemnation of plaintiff's property. There is in fact authority for the abstract proposition that the initiation of condemnation proceedings in state court would ipso facto require dismissal of this action. See DeSalvo v. Arkansas Louisiana Gas Co. (E.D.Ark.1965), 239 F.Supp. 312, 317. It should be clearly understood by the parties that the decision of the court today is not in anywise intended to lend indirect sanction to unreasonable delay by the defendants in the future.

Therefore, the court is convinced that it is without jurisdiction of this action, and judgment is being entered today dismissing the complaint of plaintiff and directing that each party pay its own costs.