FRED C. SWANSON ET AL., APPELLANTS, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE.

134 N. W. 2d 810

Filed April 30, 1965.   No. 35840.

Bosley & Bosley, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., W. L. Strong, and James J. Duggan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

This is an action in eminent domain brought by the State of Nebraska to condemn a strip of land to widen

U. S. Highway Nos. 6 and 34 as it crossed the farmland belonging to the condemnees Fred C. Swanson and Clarence K. Swanson. Ruth L. Swanson and Donna A. Swanson are the respective spouses of the other condemnees and have no interest in the property except as such.

The condemnees appealed from the award of the appraisers appointed by the county judge to the district court for Red Willow County. There the condemnees were designated as plaintiffs and the condemner as defendant and they will be referred to herein in the same manner.

A trial in district court resulted in a general verdict for the plaintiffs in the sum of $1,190. The trial court, however, submitted special findings to the jury which returned a verdict of $1,190 as the value of the land taken and nothing for consequential damages to the remaining land of the plaintiffs.

Plaintiffs' motion for a new trial being overruled, they have brought the case to this court by an appeal.

The plaintiffs' land which was taken by condemnation consisted of 2.38 acres on the north and adjoining U. S. Highway Nos. 6 and 34 that passes through the lands of the plaintiffs located in the southwest quarter of Section 21, Township 3 North, Range 30 West of the 6th P.M. The land lies 4½ miles west of McCook, Nebraska. The highway before the taking was immediately north of the right-of-way of the Chicago, B. & Q. Railroad. There is some discrepancy in the exact acreage of the plaintiffs' land before the taking but it consisted of approximately 161.62 acres in all. The land was traversed by a drainage ditch which had been built by the railroad. It extended from the north in a southeasterly direction across the premises. Two fields laid north of the highway as it passed through the premises before the taking. One on the east of the drainage ditch contained 57.13 acres. That west of the drainage ditch contained 10.23 acres, less, however, 3.36 acres sold to

the Perry Grain Company on the west end thereof for storage in connection with its elevator across the road on the railroad right-of-way.

In addition to the 2.38 acres actually taken, access from the lands on the north was limited to the reconstructed highway. After the taking the only entrance provided on the highway was one entrance at the extreme east end of the property as the highway passed through the premises. This entrance was built by the defendant and was 20 feet wide. An entrance was maintained at this same location before the taking. Access to the highway had been possible at all points previously and plaintiffs had used two entrances, one at either side of the drainage ditch. Access remained available, however, from the county road along the east line of the premises and to the field west of the drainage ditch by an easement reserved by plaintiffs through the land conveyed by them to the Perry Grain Company. The greater portion of the plaintiffs' land lay south of the railroad right-of-way and from the evidence it would appear there was no claim of consequential damage to it. The residence and farmstead buildings were located on the south side of the railroad right-of-way bordering on the east line on a tract of 3.9 acres. A lane led from the building spot north along the line across the railroad tracks onto the highway directly across from the new entrance provided by the State. The premises were irrigated, that on the north of the highway from an irrigation ditch by private wells and gravitation. South of the highway water was pumped for irrigation either by gravity or by a sprinkling system from ponds formed from gravel pits.

The errors assigned by the plaintiffs so far as are pertinent will be stated as discussed.

The plaintiffs contend the verdict was contrary to the law and the evidence and for that reason a new trial should have been granted. They urge the jury was required to find some consequential damages and under

the special finding they found none. Testimony on behalf of the plaintiffs indicated consequential damages to the remainder of the premises based on its value before and after its taking in a large amount. Only one witness testified for the defendant concerning value. He testified the value of the remainder of the premises after the taking had depreciated only $48. He attributed this to the necessity of moving an electric fence running along the north line of the old highway. The plaintiff Clarence K. Swanson testified that he moved the electric fence and 8 rods of woven wire fence which crossed the drainage ditch involved and stated the cost of their removal was $54.60. "The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking. * * * Everything which affects the market value is to be taken into consideration. The burden of additional fencing, and like matters, are to be included, not by being added together item by item, but to the extent that, taken as a whole, they detract from the market value of the property." Crawford v. Central Nebraska Public Power & Irr. Dist., 154 Neb. 832, 49 N. W. 2d 682. In the case before us, not only was testimony received concerning the costs of moving the fences of the plaintiffs, but such cost was directly related to the consequential damage to the remainder of the premises after the taking by the State's witness. All of the other witnesses testified that there was substantial consequential damage to the remainder of the land. Where the testimony of all the witnesses in a condemnation case showed some consequential damage to the remainder of the land, a special finding by the jury that there was no such damage was not sustained by the evidence and a new trial should have been granted for that reason.

Inasmuch as the case must be retried because of

the error stated, it will be necessary for us to discuss certain other errors assigned.

The plaintiffs contend the verdict was likewise contrary to the law and the evidence because consequential damages had to be assessed for loss of access to the highway from the premises on the north by reason of the restriction to a single entrance hitherto alluded to. In W. E. W. Truck Lines, Inc. v. State, *ante* p. 218, 132 N. W. 2d 782, this court held: "The right of an owner of property abutting on a street or highway to ingress and egress to and from his premises by way of the street is a property right in the nature of an easement in the street which he cannot be deprived of without due process of law and compensation for his loss.

"An abutting property owner is entitled to recover the damages resulting from the destruction or material impairment by the State of his right of access to an existing highway.

"The measure of the right of the owner of property abutting on a street to access to and from it by way of the street is reasonable ingress and egress under all the circumstances.

"Whether the right of access to an existing highway has been destroyed or materially impaired is a question of fact which must be determined upon the particular facts in each case."

The entrance provided by the State on the highway near the east line of the premises was located in the same place as a previous entrance and across the road from the lane which led from the buildings. Plaintiffs' testimony tended to show the ground to the north of the entrance provided was lower than the rest of the field and water was collected there making it difficult to be used at times. Before the taking there was evidence that the plaintiffs could enter the fields to the north of the highway at all points and that they had used entrances on each side of the drainage ditch. After the taking there remained other entrances to the field hither-

to alluded to. The court by instruction No. 13 submitted to the jury to be determined as a matter of fact the question of whether the plaintiffs' access to the premises after the taking was unreasonably restricted and permitting recovery of damages if it so found. The instruction seems to follow the rule of law stated in W. E. W. Truck Lines, Inc. v. State, *supra*, and the plaintiffs made no objection to it. The instruction properly submitted the question to the jury which viewed the premises.

The plaintiffs assign error in restricting the opinion of the plaintiff Clarence K. Swanson as to the value of the property taken. On direct examination he detailed a minute description of the premises with respect to its adaptability for agricultural purposes only. He stated he had an opinion of the value of the 2.38 acres actually taken. When asked what that opinion was, the defendant's counsel obtained permission to ask questions concerning the foundation for such an opinion. The answers elicited showed the witness was basing his opinion on the value of the premises for industrial purposes. Objection that there was an insufficient foundation for such an opinion was sustained. An effort seeking to lay a foundation was thereafter made by the plaintiffs' counsel. The court continued to rule thereafter that a sufficient foundation had not been laid. The witness was not again asked his opinion of the value of the land for industrial uses. The owner of real estate which is taken in condemnation proceedings who is familiar with its value can testify as to its value. State v. Wixson, 175 Neb. 431, 122 N. W. 2d 72; 32 C. J. S., Evidence, § 546(116), p. 433. The owner may testify to the value of his property without any foundation being laid other than the fact of his ownership. Borden v. General Ins. Co., 157 Neb. 98, 59 N. W. 2d 141. The witness who was also the owner should have been allowed to testify without laying a foundation.

Further error is assigned by the plaintiffs in excluding

the testimony of the sale price of two tracts of land sought to be used by the plaintiffs in comparison with the land taken. One tract consisted of the 3.36 acres of land in the northwest corner of the plaintiffs' farm which was sold by them to the Perry Grain Company for grain storage facilities in connection with its elevator on the railway right-of-way immediately across the highway. The sale price of this tract was attempted to be related by the plaintiff Clarence K. Swanson. The other was a tract of 1 acre sold for residential purposes which was testified to by the witness George Pearson. In both instances the court sustained objections to questions propounded as to the sale price on the ground of insufficient foundation and no further foundation was given. It is not necessary that this court review the evidence in the record concerning the foundation as it may be different on the new trial. In an eminent domain proceeding, a wide discretion must be granted the trial judge in determining the admissibility of evidence of other sales, and the evidence should not be admitted where there is a marked difference in the situation of the properties or unless the judge is satisfied that the price paid was sufficiently voluntary to be a reasonable index of value. 29A C. J. S., Eminent Domain, § 273 (10), p. 1210. See, also, State v. Mahloch, 174 Neb. 190, 116 N. W. 2d 305.

Lastly, the plaintiffs assign error to the trial court in the giving of the following instruction: "INSTRUCTION No. 10. In this case it is contended that a part of the land in this action is suitable and adaptable for commercial and residential development. However, you are not permitted to speculate as to whether or not said land is adaptable for such purposes. Before you are permitted to consider this matter in determining the market value of the land in question as of February 4, 1963, you must find that such adaptability must have been so reasonably probable and so reasonably expected in the immediate future as to affect the market value

of the land at the time the land was taken or damaged. Should you find from the evidence that such suitability or adaptability was merely within the realm of possibility, but not reasonably probable, then you cannot consider such possibility in arriving at the fair market value at the time of the taking involved herein." The instruction follows the rules of law set out by this court in Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209, and Lybarger v. State, 177 Neb. 35, 128 N. W. 2d 132, and correctly states the law applicable to the evidence disclosed by the record in the case before us. There was no error in giving the instruction.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for further proceedings pursuant to this opinion.

REVERSED AND REMANDED.