CLEARWATER CORPORATION, A NEBRASKA
CORPORATION, APPELLANT, V.
CITY OF LINCOLN, NEBRASKA, A MUNICIPAL
CORPORATION OF THE STATE OF NEBRASKA, APPELLEE.

301 N.W.2d 328

Filed January 23, 1981. No. 43106.

Thomas F. Dowd, P.C., for appellant.

Dixon G. Adams for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

HASTINGS, J.

This was an eminent domain action brought by the City of Lincoln, Nebraska, to acquire certain lands of the defendant, Clearwater Corporation, in Sarpy County, to be used as a water well field by the City. This is the second time we have had occasion to review this case. The original appeal appears at 202 Neb. 796, 277 N.W.2d 236 (1979). However, a brief history of the litigation will be helpful to a resolution of this case.

The original action was commenced on December 8, 1976, by the City when it filed its petition to condemn in the county court of Sarpy County against Clearwater, as the fee owner, and Glessie May and Frank T. Short, as mortgagees, of the property involved. Following the appointment of appraisers and a hearing, the appraisers issued a report on January 12, 1977, assessing total damages of $442,800 for the taking, $395,235.50 of which was allocated to Clearwater, and $47,564.50 to the Shorts. On February 10, 1977, the City filed a notice of appeal to the District Court for Sarpy County from the appraisers' award of $395,235.50 to Clearwater. The appeal did not mention the award to the Shorts. The City, upon in-

stituting the appeal, deposited the total amount of the award of $442,800 with the county court.

After trial to a jury in the District Court, a verdict was returned in favor of Clearwater, in the sum of $522,700. The City appealed, and we reversed and remanded the cause for a new trial. The second trial resulted in a verdict in favor of Clearwater in the sum of $244,074. Clearwater filed a motion for a new trial, which was overruled, and it now appeals to this court.

Clearwater assigns as error that the District Court failed to allow certain testimony by its expert appraiser, Joseph Strawn, regarding three real estate transactions which he claimed to be comparable properties to that of Clearwater's, and which he took into consideration in arriving at his opinion of damages. Further assigned as error is the manner in which the District Court computed the amount of credit to be given to the City from the amount already paid into county court pursuant to the appraisers' report. We affirm the judgment of the District Court.

The first assignment of error involves portions of testimony by the appellant's expert, Joseph Strawn. Strawn testified that in appraising the fair market value of the property condemned, he must first determine what was the highest and best use that the property could be put to. He concluded that such use was for sand and gravel excavation, followed by recreational development. The excluded testimony related to three separate real estate transactions which Strawn used as comparables. They comprised: (1) The sale of nearby farmland that has as its highest and best use commercial development; (2) The sales price of developed lots at Villa Springs; and (3) The sale of a lease on existing recreational lands at Willow Point. The trial court accepted an offer of proof on all three sales.

The appellant argues on appeal that it is error for the trial court to refuse to permit an expert witness the

opportunity to state facts upon which he bases his opinion, citing Neb. Rev. Stat. § 27-705 (Reissue 1979). Clearwater further argues that where the value of real estate is an issue, evidence of particular sales of other lands is admissible as independent proof on the question of value.

Section 27-705 states that an expert may testify as to his opinion without prior disclosure of the underlying facts and data. The statute further requires him to disclose such data if required to by the court. However, that statute does not require the court to allow testimony as to all underlying factors. In fact, § 27-705 allows an expert to base his opinion upon facts or data that are not necessarily admissible in evidence. Simply because such evidence is relied upon does not affect its admissibility.

However, Clearwater maintains that by not allowing the expert to testify to the underlying data, the court prejudiced Clearwater's case by weakening the opinion of its expert in the eyes of the jury.

It is well settled that evidence of the price at which other lands have been sold is admissible in evidence in condemnation proceedings on the question of damages where such evidence is predicated upon sufficient foundation to furnish a criterion for market or going value of land condemned. *O'Neill v. State*, 174 Neb. 540, 118 N.W.2d 616 (1962). However, it is equally clear that such land must be similar or similarly situated land sold at about the same time, especially when the price paid depends upon the market or going value rather than other considerations. *Lynn v. City of Omaha*, 153 Neb. 193, 43 N.W.2d 527 (1950).

"In an eminent domain proceeding, a wide discretion must be granted the trial judge in determining the admissibility of evidence in other sales, and the evidence should not be admitted where there is a marked difference in the situation of the properties . . . ." *Swanson v. State*, 178 Neb. 671, 678, 134 N.W.2d 810, 815 (1965).

We recognize that recent and comparable sales of real estate may be admissible as evidence in condemnation cases for two different purposes. They may be admitted as substantive proof of value of the condemned property or as foundation and background for an expert's opinion of value. *State Highway Comm. v. Hayes Estate*, 82 S.D. 27, 140 N.W.2d 680 (1966). The rule on comparability is not as strict for foundational purposes as it is when the comparable is used as direct and independent proof of value. However, there still must be a certain degree of similarity for both purposes, and the trial court is vested with wide discretion in ruling on admissibility for either purpose.

We agree with the South Dakota court which takes the position that to warrant a reversal on either the admission or exclusion of this type of evidence requires a clear abuse of discretion.

"Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused. The exact limits, either of similarity or difference, or of nearness or remoteness in point of time, is difficult, if not impossible, to prescribe by any arbitrary rule, but must to a large extent depend on the location and the character of the property and the circumstances of the case." 5 Nichols on Eminent Domain § 21.31 (1979).

We have reviewed the record below and find that Clearwater's expert was allowed to testify to his ultimate opinion of value of the condemned tract, and was allowed to state the basis for this opinion, as well as the fact that he relied on three comparables. The only thing that was excluded was the actual sale price of the three transactions. It should be noted that one of the comparables was approximately half the size of the Clearwater tract, was not located along

the river as was Clearwater's, was rolling land as opposed to being flat, was on the interchange of Highway 31 and Interstate 80, and had a potential for commercial use. The Clearwater tract was not located on any highway, and had as its potential sand and gravel excavation followed by recreational development. The only real factor in common was that they presently were both used as farmland. The District Court clearly did not abuse its discretion in refusing to allow testimony of the sale value of this land.

The second "comparable transaction" involved the sale of developed lots at Villa Springs in 1974. The Villa Springs lots were geographically proximate to the Clearwater tract and comparable in size to the proposed Clearwater lots. However, Villa Springs was fully developed at the time, as opposed to a totally undeveloped Clearwater tract. As a matter of fact, Mr. Strawn testified that it would take 20 years to fully develop the Clearwater tract. As we stated in the first opinion, *Clearwater Corp. v. City of Lincoln,* 202 Neb. 796, 277 N.W.2d 236 (1979), evidence of the market value of lots in developed recreational areas has but a remote connection to the value of land in its undeveloped state. Although, if used as foundation only for the expert's final opinion, such evidence could have some probative value, we cannot say that the exclusion of it either was prejudicial or clearly wrong.

The third transaction that was excluded was the sale of a lease of a developed lot at Willow Point. There was testimony that the proposed lots at Clearwater would either be leased or sold. What relevance the price for the privilege of taking over a lease would have to the value of the condemned property is not shown. The court was clearly correct in excluding this testimony.

The second assignment of error relates to the amount of refund the City of Lincoln is entitled to receive from the $442,800 deposited with the county court of Sarpy County. Clearwater argues that since

the City appealed only from that portion of the appraisers' award made to Clearwater in the sum of $395,235.50, and not from the total amount, the refund should be calculated by subtracting the jury award from the $395,235.50 figure. What the District Court did do was to credit to the City the difference between the jury award of $244,074 and the total deposit of $442,800 made in county court.

Of the initial award of $442,800 made by the appraisers in county court, $47,564.50 was allocated to Glessie May Short and Frank T. Short, holders of the purchase money mortgage. The City did not appeal from the amount set off to the Shorts, since this constituted the balance remaining unpaid on the mortgage. Irrespective of the manner in which the allocation was made, there is no doubt that Clearwater was the beneficiary of the entire amount awarded and paid, and that amount covered all damages occasioned by the fee taking as well as the severance.

In the trial to the jury, the amount of $244,074 was returned as a verdict for Clearwater. It is clear from the record that the jury was instructed to find the amount of damages created by the taking in total without regard to any underlying mortgage or other interest. Instruction No. 1 to the jury states in part: "By the respective pleadings and stipulations, the only issues presented for consideration and determination by the jury is the fair and reasonable market value of the tract of land taken by the City of Lincoln as of December 8, 1976, and the damages, if any, to the property remaining after said taking."

The appraisers' award of $442,800 and the jury's verdict of $244,074 embraced exactly the same interest; i.e., the fair market value of the land taken, plus the severance damage to the remainder. Neb. Rev. Stat. § 76-719.01 (Reissue 1976) states that if the compensation finally awarded is less than the amount of money received by the condemnee, the court shall enter judgment against the condemnee for the amount

that it has been overpaid, together with interest from the date of withdrawal.

The order of the District Court directing the return to the City of $237,981.27, representing the overpayment of $198,726 plus interest, was correctly calculated.

The judgment and order of the District Court are affirmed.

AFFIRMED.