BEATRICE R. LANGFELD, OWNER, DANIEL LANGFELD, HUSBAND OF BEATRICE R. LANGFELD, APPELLEES, V. STATE OF NEBRASKA DEPARTMENT OF ROADS, APPELLANT.

328 N.W.2d 452

Filed December 10, 1982. No. 44422.

Paul L. Douglas, Attorney General, and Warren D. Lichty, Jr., and Sharon M. Lindgren, for appellant.

Charles L. Titus and Robert L. Freeman of White, Lipp, Simon & Powers, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

The appellant, the State of Nebraska Department of Roads, has appealed a judgment in condemnation entered by the District Court for Sarpy County. Assigned as errors include the reception into evidence of value opinion testimony given by the landowner and an expert witness, the exclusion of certain exhibits, improper jury instructions, and excessiveness of the award of attorney fees.

By this action the State of Nebraska Department of Roads acquired the fee title to 5.2 acres of approximately 99 acres of land owned by Beatrice R. Langfeld. The purpose of the acquisition was to reconstruct Highway 50 near its intersection with Interstate 80. In addition to the fee title, certain restrictions as to access from Highway 50 to the plaintiff's remaining property were imposed. The board of appraisers in the county court had awarded damages in the total sum of $131,000. On plaintiff's appeal to the District Court she testified that in her opinion her total damages amounted to $444,603, whereas her expert witness, Joseph G. Strawn, indicated total damages of $438,200. Motions to strike the opinion testimony of both of these witnesses on the ground of lack of foundation were overruled. The State's expert witnesses, Attilio Rindone and George J. Bighia, testified that the total damages were $109,298 and $97,600, respectively. The jury returned a verdict in the amount of $316,595. In addi-

tion, the court awarded the plaintiff the sum of $1,900 as a fee for her expert witness and $45,000 for her attorney fees.

One of the main points of contention between the parties was whether the plaintiff's land at the time of taking was commercial in nature or whether it simply had commercial potential. To a great extent a resolution of this matter depends upon the nature of the access from Highway 50 to the plaintiff's land existing as of the date of the present taking, as well as that which remained following these proceedings.

The plaintiff testified that in placing a value upon her property she considered it as commercial property. In doing so, according to her, she considered the type of access that the property had before the taking. In her words this consisted of two general-purpose driveways and a farm entrance. She said that a general-purpose entrance would accommodate "anything we wanted to bring in" without any limitations having been placed on those accesses by the Department of Roads.

However, the record is quite clear that in a 1962 condemnation proceeding a strip of land formerly part of the plaintiff's farm and lying between the highway right-of-way and the remainder of the property was taken. Those proceedings provided that "there will be no ingress or egress" from the property taken onto the remainder of plaintiff's land except for one private residential entrance "to provide ingress and egress to dwelling of the owner so long as it is used consistent with normal activities thereto" and except for two field entrances "to provide for the movement of farming implements and crops so long as they are used consistent with normal farming operations of the owner." By stipulation later entered into between Mrs. Langfeld and the State of Nebraska, it was agreed that all three entrances or driveways were to be changed to "farmstead entrances to provide ingress and egress to the dwellings and outbuildings sites so long as

they are used consistent with rural living and farming activities."

Additional testimony of the plaintiff, which was claimed to be foundational in support of her opinion as to value, included the fact that she had purchased the property in 1951; that it was used for farming purposes; and that she and her husband moved off the farm in 1974 but the land was still being used for agricultural pursuits, specifically the raising of miniature donkeys. She also said that she was aware of commercial development around the farm, but was not familiar enough with sales of other property in the vicinity as to be able to quote them. As previously mentioned she admitted that in concluding that the property could be developed for commercial interests, she took into account the access which she understood she had and was losing as a part of the instant proceedings. She said that she had never inquired as to whether commercial development would be feasible with the use of the existing driveways, nor did she know from a technical standpoint what would have to be done to provide sewer services, whether gas service was available for certain, or how much it would cost to develop the land. She had never contacted anyone about developing the property. On further questioning she acknowledged that she was a little out of date regarding the access road because she had not lived there for 7½ years. She said that if it were shown that there were restrictions as to access previously existing which would prevent commercial development, she did not know whether that would affect her opinion as to value because that was a very important question which she was not prepared to answer at that time.

Following the conclusion of Mrs. Langfeld's testimony, the State moved to strike all of that testimony relating to value on foundational grounds, which was overruled. It is the court's ruling in denying that motion that constitutes the State's first assignment of error.

As pointed out above, at the time these proceedings were commenced there was a controlled access line preventing ingress and egress from Highway 50 to the plaintiff's land except for the three farmstead driveways. Without further explanation this factor would seem to obviate any reasonable conclusion that the property as it existed at the time these proceedings were commenced was commercial property. The record is also clear that by the terms of these proceedings, although two of the three farmstead driveways were eliminated, they authorized a larger, commercial drive with no restrictions as to the number or size of vehicles entering or leaving the premises.

Considering the plaintiff's apparent misconception as to the situation regarding access, her failure to demonstrate any awareness of the suitability of her property for commercial development, and a lack of knowledge as to the state of the market, we believe that her opinion testimony was utterly devoid of foundation.

However, the plaintiff relies upon what she denominates in her brief as the established rule in Nebraska that a "landowner is always qualified to testify as to the value of her own property in a condemnation action without any further foundation being required." It is true that in a number of our reported cases we can find language strongly supportive of that rule. In *Thacker v. State,* 193 Neb. 817, 824, 229 N.W.2d 197, 202 (1975), we said: "Of course, the owner may always testify as to its value." Earlier, in *Schmailzl v. State,* 176 Neb. 617, 622, 126 N.W.2d 821, 824 (1964), appears similar language: "An owner, by virtue of the ownership relation, is qualified to give his estimate of the value of such property." A case decided the following year which would appear to be directly in point is *Swanson v. State,* 178 Neb. 671, 677, 134 N.W.2d 810, 814 (1965), in which we said: "The owner of real estate which is taken in condemnation proceedings who is familiar

with its value can testify as to its value. State v. Wixson, 175 Neb. 431, 122 N.W.2d 72; 32 C.J.S., Evidence, § 546(116), p. 433. The owner may testify to the value of his property without any foundation being laid other than the fact of his ownership. Borden v. General Ins. Co., 157 Neb. 98, 59 N.W.2d 141. The witness who was also the owner should have been allowed to testify without laying a foundation."

The "ipso facto" rule, as stated above, apparently would permit a person with a limited farm experience, who has no knowledge of the attributes of land necessary for commercial development and no information as to the state of the market as to such type of land, to express an opinion as to value of the land for commercial purposes. Because we believe such conclusion is completely unreasonable, we have chosen to reexamine the logic of the presently existing rule.

The statement in *Thacker, supra,* was pure dictum. *Schmailzl* cited *Johnson v. City of Lincoln,* 174 Neb. 837, 120 N.W.2d 297 (1963), in support of its statement that ownership was the foundation stone warranting an opinion as to value. However, an examination of *Johnson* reveals the following language: "It cannot be questioned that the owner of the real estate which is taken in a condemnation proceeding, or the lessee thereof, who is familiar with its value, and the owner of personal property can testify as to its value. See Chicago, R. I. & P. Ry. Co. v. Buel, 56 Neb. 205, 76 N.W. 571." *Id.* at 848, 120 N.W.2d at 304.

*Swanson, supra,* cites *State v. Wixson,* 175 Neb. 431, 122 N.W.2d 72 (1963), which in turn relies on *Johnson,* and so on back to *Chicago, R. I. & P. R. Co. v. Buel,* 56 Neb. 205, 76 N.W. 571 (1898). Actually, *Swanson* relied in part upon *Borden v. General Insurance Co.,* 157 Neb. 98, 59 N.W.2d 141 (1953), which was a case involving personal property. Of course, the rule as to personal property is purely one of necessity, as suggested by *Jensen v. Palatine Ins. Co.,*

81 Neb. 523, 116 N.W. 286 (1908), cited in *Borden.* In *Jensen* this court said: "We are of the opinion that where the value of a stock of goods is a relevant fact, *and no more accurate evidence is under the circumstances obtainable,* the owner of such stock and witnesses acquainted with the value of the different articles of which such stock is composed, and who have observed the same for the purpose of estimating the value thereof, may give their opinion of such value." (Emphasis supplied.) *Id.* at 529, 116 N.W. at 289.

However, returning to our common denominator case, *Buel,* its pertinent language is as follows: "It is argued that he [the owner] was not shown to be competent to testify on the question of value. The evidence discloses that he owned the land and *cultivated it, was familiar therewith and with other real estate in the same vicinity, and that he was acquainted with the value of his farm before and after the location of the defendant's right of way.* He was competent to testify on the subject of value, even though he was not an expert, or dealer in real estate. The first paragraph of the syllabus in *Burlington & M. R. R. Co. v. White,* 28 Neb. 166, reads thus: 'Where witnesses are shown to be familiar with the value of a particular piece of land across which a railroad has been built, they are competent to testify as to the value of such tract of land . . . .' And the first and second divisions of the syllabus in *Burlington & M. R. R. Co. v. Schluntz,* 14 Neb. 421 [16 N.W. 439 (1883)] are as follows: '(1.) The owner of land taken for right of way by a railroad company, having resided upon and improved it for several years, who swears that he knows what it is worth, is a competent witness on the question of value. (2.) So, too, are other persons who have resided for several years in the immediate neighborhood of the land, and who seem, upon examination, to be well informed of its situation, condition, and value.' " (Emphasis supplied.) *Id.* at 208-09, 76 N.W. at 572-73.

Decided 2 years before *Buel* is *Chicago, B. & Q. R. Co. v. Shafer,* 49 Neb. 25, 68 N.W. 342 (1896). This court held that if neighbors in the vicinity of the property have been declared competent to testify as to value, then an owner, who has resided upon his own land and is "acquainted from hearsay with the recent sales of land in the vicinity and the prices paid therefor," is also competent to testify. The court's precise holding is contained in the following language: "It appears further from the cross-examination that the plaintiff has resided upon and owned the tract of land in question, which adjoins the city of Seward, for more than twenty years, and knew the cost of the improvements thereon. He is also shown to have been acquainted with the recent sales of land in that vicinity and the prices paid thereat. It has been frequently said by this court that to qualify a witness to give testimony concerning the value of land he must be shown to possess some knowledge of the subject, although the amount or scope of such knowledge has not been defined. Nor is it at this time deemed necessary, if, indeed, it were possible, to lay down a precise rule by which to determine the competency of witnesses as to value in all cases. It is sufficient that resident owners of land in a farming neighborhood have generally been held competent witnesses to the value of real estate in such community. In a leading case upon the subject, *Robertson v. Knapp,* 35 N.Y., 91, the witnesses, all of whom were residents of the immediate neighborhood, some being engaged in farming and others retired farmers, were held competent without further showing. In the opinion it is said: 'There are no certain data which, if given, will fix the value of land. The same data will produce widely different results as to the value, depending, perhaps, on location and the use to which it can be applied, or upon the demand. The value of land in the vicinity is usually understood by all of the residents of a farming neighborhood, without respect to occupation.'

The opinion of such a witness may not be the best or most satisfactory evidence attainable, and yet it is difficult to conceive of persons better qualified to testify upon the subject of the value of *farming* lands than resident owners of like property in the particular locality." (Emphasis supplied.) *Id.* at 31-32, 68 N.W. at 343.

Finally, we refer to *B. & M. R. R. Co. v. Schluntz,* 14 Neb. 421, 16 N.W. 439 (1883), cited as authority in *Buel,* and another similar case decided at the same term of court as *Schluntz, M. P. R. R. Co. v. Coon,* 15 Neb. 232, 18 N.W. 62 (1883). In *Coon,* this court, speaking through Lake, C.J., found that an owner-witness' testimony was erroneously admitted. The court said: "Without any showing whatever, there is certainly no presumption that a witness is competent to give a reliable estimate of the market value of land; and where one's competency is challenged, before he should be permitted to express an opinion, it should be made to appear that he has in some way become qualified to do so." *Id.* at 233, 18 N.W. at 62-63.

Lake, C.J., again speaking for the court, said in *Schluntz:* "The defendant himself was the first witness called. He was subjected to a very lengthy examination upon the question of his competency to testify as to the value of the property. He swore explicitly that he knew its value, and from the fact that he had lived there for twelve years, had made the improvements upon it, and appears to have possessed ordinary intelligence at least, I am satisfied he was qualified to give his opinion on that point." 14 Neb. at 422-23, 16 N.W. at 440.

It seems apparent to us from a review of these early authorities that we have on occasion utilized some broad language. However, the thrust of our competency rule has been to permit the owners of residential or farm properties, who testify that they are familiar with its values, to offer opinions on such value when the land is to be used for the same pur-

pose. We believe that we went too far in *Swanson v. State,* 178 Neb. 671, 134 N.W.2d 810 (1965), when we reversed the action of the District Court and held that a farm owner who testified in detail respecting the adaptability of his land for agricultural purposes only might nevertheless express an opinion as to its value for industrial purposes.

Both Kentucky and Montana have struggled with this same problem. In *Commonwealth, Department of Highways v. Fister,* 373 S.W.2d 720 (Ky. 1963), that court reviewed the history of the "ipso facto" rule and declared that it originated as a matter of practical necessity. It then reasoned that if an owner is presumed qualified to express an opinion simply by reason of ownership, he can immediately testify concerning market values, when in truth and in fact he may lack such knowledge. It then went on to announce a "new rule" as follows: "We see no reason why an owner, before expressing his opinion concerning the market value of his real estate, should not have the initial minimum qualifications required of his neighbors. It follows that the qualifications of the owner witness, as other witnesses, must be affirmatively shown *before* his opinion of market values is expressed." (Emphasis supplied.) *Id.* at 722-23. Such a rule in Nebraska would require the owner to have an acquaintance with the property and to be informed as to the state of the market. *Chudomelka v. Board of Equalization,* 187 Neb. 542, 192 N.W.2d 403 (1971).

Montana has arrived at a somewhat different and, we believe, more reasonable solution. In *Alexander v. State Highway Comm'n,* 142 Mont. 93, 381 P.2d 780 (1963), the Montana court reviewed the earlier cases in much the same way that we have done here. It then concluded: "A resume of the foregoing expressions of this court on the rule permitting an owner to estimate the value of his property discloses that in the early opinions the owner needed the qualifications of practical experience, observation and knowl-

edge on which to base an intelligent opinion." *Id.* at 108, 381 P.2d at 788. It went on to say: "It would appear from the expressions in our later opinions that mere proof of ownership has been interpreted to permit such owner to estimate the value in any field of use of his property that could be conceived, rather than limiting it to his reasonable opinion as to the value of the property. We believe the rule should be further limited to make the owner a competent witness to testify as to the reasonable value of the property for the use to which he is putting it, and to go beyond that field he must possess the qualifications required of a general witness as to value. Illustrating our view, one using land owned by him for the purpose of pasture in grazing cattle may testify in a reasonable way as to its value for that purpose, but he may not testify as to its value as town lots, or as a gravel pit, or for any other purpose unless he be further qualified." *Id.* at 109-10, 381 P.2d at 789.

We therefore restate the rule to be that an owner who is shown to be familiar with the value of his land shall be qualified to estimate the value of such land for the use to which it is then being put, without additional foundation. Such owner is not qualified by virtue of ownership alone to testify as to its value for other purposes unless such owner possesses, as must any other witness as to value, an acquaintance with the property and is informed as to the state of the market. Since the adoption of this rule may make necessary a different procedural method from that heretofore allowed, it shall apply only to trials held after the issuance of the mandate in this case. However, as the judgment before us must be reversed on other grounds, the restated rule here will apply on a retrial of this cause.

The next assignment of error concerns the testimony of Joseph G. Strawn as an expert witness on value. The State contends that it should have been stricken because of his reliance upon "noncom-

parable" sales and that he incorrectly concluded that the land was commercial property.

The first sale he described was a tract of ground containing 48,310 square feet located just across Interstate 80 from the subject property, and which he stated was commercial property. Although he gave no selling price for the specific property, he had indicated that property generally in that commercial subdivision was selling for $1.25 to $1.75 per square foot.

The second sale was located approximately 1 mile north of the plaintiff's property, on Highway 50 and Harrison Street, and consisted of 24,000 square feet, or a little more than one-half of an acre. This sold for $2.49 per square foot.

The third sale involved a tract of ground consisting of 7.9 acres located north of Papillion. It had been purchased by K-Mart Corporation for $56,500 per acre.

According to Mr. Strawn's testimony the first two sales were developed properties, i.e., the utilities and streets were all in place. He said that he was able to compare these properties with the Langfeld property by plugging in some type of an improvement factor. He attempted to explain this factor later on during cross-examination when he stated that it would cost approximately $12,000 per acre to develop raw land for commercial purposes. The third sale, he said, was of undeveloped land. However, no attempt was made to correlate the various factors inherent in that property with those of the Langfeld land.

The State calls our attention to several of our recent opinions dealing with comparable sales. Specifically, in *Clearwater Corp. v. City of Lincoln,* 202 Neb. 796, 804, 277 N.W. 2d 236, 241 (1979), we said: "Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or

conjecture. The witness should not be allowed to express an opinion on an inadequate basis or in respect to facts not disclosed to the jury.''

The second time around, in *Clearwater Corp. v. City of Lincoln,* 207 Neb. 750, 301 N.W.2d 328 (1981), we were faced with a claim of error for rejecting evidence of so-called comparable sales. We said: "It is well settled that evidence of the price at which other lands have been sold is admissible in evidence in condemnation proceedings on the question of damages where such evidence is predicated upon sufficient foundation to furnish a criterion for market or going value of land condemned. [Citation omitted.] However, it is equally clear that such land must be similar or similarly situated land sold at about the same time, especially when the price paid depends upon the market or going value rather than other considerations.'' *Id.* at 753, 301 N.W.2d at 330. We concluded by stating with approval the rule from 5 Nichols on Eminent Domain § 21.31 (1979): '' 'Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused. The exact limits, either of similarity or difference, or of nearness or remoteness in point of time, is difficult, if not impossible, to prescribe by any arbitrary rule, but must to a large extent depend on the location and the character of the property and the circumstances of the case.' '' *Id.* at 754, 301 N.W.2d at 330.

The testimony of the witness as to the details of the three sales was meager at best. But, assuming the correctness of the characterization of the plaintiff's land as commercial property, we cannot say that the trial court abused its discretion in admitting evidence of the three sales.

However, we cannot agree that the record supports a conclusion that this was commercial prop-

erty. In dealing with this issue, we will of necessity have to consider the court's exclusion of certain exhibits, which comprises a separate assignment of error.

Reference has been made earlier to the nature of the access to this property which existed both before and after the commencement of the present proceedings. Although Mr. Strawn stated that "in essence" he was not basing his opinion on unrestricted access to the property, he went on to say: "The access was already at Cornhusker [county road] for this property. There's no limitation on the county road, and there was an access provided, in fact until just a short time ago, to the north edge of this property . . . that was just eliminated . . . . So . . . there was sufficient access for commercial development." Earlier, he had testified that access was limited onto Highway 50 by reason of condemnation proceedings in 1960; however, he went on to say that "there was a stipulation in the County Court records for Langfeld's property, Voss's property, Karloff's, Hanson, from Harrison Street ultimately all the way to the north of Springfield at the Fase property where the State of Nebraska allowed access every quarter of a mile. So depending, of course, on their permit, I assumed the access to be at the north end of the Langfeld property and at Cornhusker . . . ."

Earlier, the plaintiff herself had testified that prior to the present proceedings her access directly to the county road was limited to "two farm entrances, two tractor entrances." Although the witnesses for both parties could have been more specific in their testimony, it appears from the record that the entrance "to the north edge of this property" referred to by Mr. Strawn was the one farm driveway which the State did not eliminate by these proceedings.

Finally, his statement that access was provided for the Langfeld property every quarter of a mile by the stipulation is just not supported by the record.

There is found in exhibit 9 a stipulation between the Department of Roads and Mildred Voss, Wilma Wessel, Raymond Wessel, and John Voss. It provides that if the remainder of the particular property owned by these condemnees is platted and subdivided, streets will be allowed access to the highway at locations to be determined and approved by the State of Nebraska, but which "shall not exceed one street for each quarter mile of State highway frontage." This is the only such stipulation which appears in the record and is applicable only to the land owned by those condemnees—Voss and Wessel. Their property is located in the north half of the northwest quarter of Section 13, Township 14, Range 11. The Langfeld property is all located within the southeast quarter of Section 23, Township 14, Range 11.

Upon further cross-examination the witness Strawn was unable to give a reference as to where the stipulation was located, and, although he testified that he was not saying that the records located in the register of deeds office were incorrect, he did insist that "I just know that there is a stipulation that there will be an access on Highway 50 every quarter of a mile."

In an effort to rebut or impeach this testimony, the State offered in evidence exhibit 11. This exhibit purported to show all documents filed in the office of the register of deeds affecting the subject property during a time commencing prior to the date when the plaintiff first obtained title in 1951 up until the present date. The documents comprising this exhibit revealed the access limitations which had been imposed by the 1962 condemnation proceedings, but, more importantly, they failed to disclose any stipulation as to the additional access, and thereby served to rebut the testimony of Mr. Strawn. The exhibit was also offered for the purpose of contradicting the plaintiff's testimony as to the nature of the access which she enjoyed both before and after these proceedings.

The reason assigned by the trial judge in sustaining the objection to exhibit 11 was that it was cumulative. The exhibit did contain much of the same information that was found in exhibit 9. Exhibit 9 was certified as containing all county court filings with reference to the 1962 condemnation action. On the other hand, exhibit 11, as earlier mentioned, contained all filings made in the office of the register of deeds affecting this property. The appellant was entitled to have all of the evidence before the jury so as to attempt to refute the witness Strawn's testimony that "I just know that there is a stipulation that there will be an access on Highway 50 every quarter of a mile." "Where the fact sought to be shown, even though independent of the fact being litigated, has an actual and substantial tendency to establish or disprove such fact, it must be admitted. Evidence is relevant not only when it tends to prove or disprove the precise fact in issue, but when it tends to establish a fact from which the existence or nonexistence of the fact in issue can be directly inferred." *Rickertsen v. Carskadon,* 169 Neb. 744, 749, 100 N.W.2d 852, 856 (1960). See, also, *Herman v. Midland Ag Service, Inc.,* 200 Neb. 356, 264 N.W.2d 161 (1978); Neb. Rev. Stat. § 27-401 (Reissue 1979).

Exhibit 11 was relevant as to the issue of whether the land in fact had commercial-type access, and it was error not to have received it in evidence. As a matter of fact, absent a further explanation, it, together with the other exhibits, would seem to contradict the assumption of both the plaintiff and her witness that the land was commercial in nature, and their testimony as to value should have been excluded. The value of an opinion of an expert witness, or any witness, must be dependent upon and is no stronger than the facts upon which it is predicated, and it has no probative force unless the assumptions upon which it was based are shown to be true. *Clearwater Corp. v. City of Lincoln,* 202 Neb. 796, 277 N.W.2d 236 (1979).

The State complains that the trial court erred in failing to instruct the jury that it could consider only the loss of *reasonable* access to the remainder property. Instruction No. 5 was the general instruction explaining "reduction in the fair and reasonable market value of the property remaining." The concluding sentence reads: "This may include the reduction in size of the property, or the remaining access and egress to the property when compared to that which existed prior to the taking." This paraphrases NJI 13.05, which concludes with "This may also include . . . the way in which you can get to and from the remaining property as compared to the way in which you could get to and from the property before the taking." *W.E.W. Truck Lines, Inc. v. State,* 178 Neb. 218, 224, 132 N.W.2d 782, 787 (1965), does, as pointed out by the appellant, contain the following language which tends to support its contention: " 'The measure of the right of the owner of property abutting on a street to access to and from it by way of the street is reasonable ingress and egress under all the circumstances.' " However, although the record does not disclose that the appellant affirmatively approved the instructions tendered by the court, it neither objected to them nor submitted a more specific instruction. If an instruction is not sufficiently specific in some respect, it is the duty of counsel to offer requests to supply an omission. *Beveridge v. State,* 183 Neb. 406, 160 N.W.2d 229 (1968).

Because we order a new trial, it is not necessary for us to consider the claimed error regarding the awarding of attorney fees.

The judgment of the District Court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

CLINTON, J., participating on briefs and concurring.

I join in the majority opinion except that I would apply to pending cases the principle of law an-

nounced in the first syllabus. I see no just reason why the principle should not be applied retroactively.