547 N.W.2d 716 (1996)
250 Neb. 96
Mabel F. McARTHUR and Denning D. McArthur, Jr., Trustees, et al., Appellees,
v.
PAPIO-MISSOURI RIVER NATURAL RESOURCES DISTRICT, Appellant.
No. S-94-191.
Supreme Court of Nebraska.
May 24, 1996.
*720 Paul F. Peters and Kathleen C. Vance, of Schmid, Mooney & Frederick, P.C., Omaha, for appellant.
Tyler B. Gaines, of Gaines, Mullen, Pansing & Hogan, Omaha, for appellees.
WHITE, C.J., and CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.
FAHRNBRUCH, Justice.
In this condemnation action, Papio-Missouri River Natural Resources District (NRD), the condemner, appeals from a jury verdict in favor of the condemnee owners, Mabel F. McArthur and Denning D. McArthur, Jr., et al. The jury awarded the condemnees $135,146 as compensation for the taking of a 61.43 acre tract in Washington County.
We reverse the judgment of the trial court and remand the cause for a new trial because the trial court abused its discretion in admitting certain testimony of an expert containing the valuation of the 61.43 acres which was not grounded upon a reasonable basis and was premised upon guess and conjecture.

ASSIGNMENTS OF ERROR
Restated and summarized, NRD assigns as error that the trial court erred in permitting Neale Shaner, over objection, to testify as an expert, in not striking the testimonies of Shaner and Russell Nelsen, and in refusing NRD's requested jury instruction. NRD also assigned as error, but did not argue in its brief, the overruling of its motion for a new trial. To be considered by an appellate court, a claimed prejudicial error must not only be assigned, but must be discussed in the brief of the asserting party. Scott v. Pepsi Cola Co., 249 Neb. 60, 541 N.W.2d 49 (1995). Therefore, we need not address the issue of NRD's motion for a new trial.

STANDARD OF REVIEW
A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it is clearly wrong. Holman v. Papio-Missouri River Nat. Resources Dist., 246 Neb. 787, 523 N.W.2d 510 (1994).
In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by said rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Floyd v. Worobec, 248 Neb. 605, 537 N.W.2d 512 (1995). A trial court is allowed discretion in determining whether a witness is qualified to testify as an expert under Neb. Evid. R. 702, and unless the court's finding is clearly erroneous, such a determination will not be disturbed on appeal. Miles v. Box Butte County, 241 Neb. 588, 489 N.W.2d 829 (1992). A trial court's ruling in receiving or excluding an expert's opinion which is otherwise relevant will be reversed only when there has been an abuse of discretion. Lantis v. City of Omaha, 237 Neb. 670, 467 N.W.2d 649 (1991).

*721 FACTS
This action arises from the July 3, 1991, NRD taking of 61.43 acres of real estate adjoining the Missouri River in Washington County. NRD acquired the property for the purpose of revitalizing the Missouri River environment and developing public recreation along the river.
The county court appointed appraisers who reported that the total damages to the condemnees for the 61.43 acres was $101,437.
The record reflects that the condemnees were Mabel and Denning McArthur, who held in trust an undivided half interest in the 61.43 acres. Penelope Sue and David N. Shaner and Laura M. Shaner, as custodian for Jeffrey A. Shaner, a minor, owned the other undivided half interest.
The condemnees appealed the award of the court-appointed appraisers to the district court for Washington County. The condemnees alleged that damages resulting from the taking were substantially in excess of the amount awarded by the court-appointed appraisers.
At trial, Neale Shaner (Shaner), husband of Laura Shaner and father of Penelope, David, and Jeffrey Shaner, was called by the condemnees to testify as an expert, as was Russell Nelsen, a licensed real estate appraiser and broker.
The trial court overruled NRD's objections to Shaner testifying as an expert and NRD's motions to strike the opinions of Shaner and Nelsen. The trial court also refused NRD's requested jury instruction that
[a]ny decrease or increase in the fair market value of real property prior to the date of valuation, caused by the likelihood that the property would be acquired for the public improvement for which such property is acquired, other than an increase or decrease due to physical deterioration within the reasonable control of the owner, shall be disregarded in determining the compensation for the property.
The jury returned a verdict in favor of the condemnees for $135,146. NRD appealed to the Nebraska Court of Appeals. Pursuant to our authority to regulate the caseloads of the appellate courts, we removed the appeal to this court's docket.

ANALYSIS

TESTIMONY OF SHANER
At the time of the taking, Shaner not only lived on the land adjoining the 61.43 acres but also, for 30 years, had farmed the land which included the 61.43 acres. Shaner stated he was well acquainted with the 61.43 acres. As an employee in the trust department of the Omaha National Bank for 13 years, Shaner managed real estate which included farmland and land similar to that being condemned in this litigation. As part of his duties, he determined the highest and best use of the property he managed.
Shaner, who earned a juris doctor degree from the University of Nebraska, testified that he was trained through trust administration schools and continuing legal education courses in property evaluation and had 13 years experience in determining the value of real property. Shaner testified that he was also familiar with determining the highest and best use of real property. He further testified that he was familiar with the real estate market in Washington County as it existed at the time of the taking involved in this litigation. In particular, Shaner testified that he was familiar with the real estate market in Washington County as it pertains to recreational uses.
Shaner's valuation of the 61.43 acres was based upon a comparable sale approach. According to Shaner, the highest and best use of the 61.43 acres would be for recreational purposes such as a Missouri River park area. He testified that Harlan Rohrberg, operator of recreational property in Glenwood, Iowa, told him that the 61.43 acres was similar to the property that Rohrberg was using for recreational purposes and that such a use would be feasible on the property in question.
Shaner compared the 61.43 acres to a 95-acre sale of agricultural land northeast of Blair, 19 acres of which was treed riverfront similar to the 61.43 acres in question. The 95 acres sold for $160,000. Shaner determined the fair market value of the 75 acres *722 of agricultural land as $1,400 per acre, subtracted the total value of the 75 acres from $160,000, and divided the remaining 19 acres into the remainder of the purchase price to determine the value of the recreational property on the comparable land. Shaner valued the comparable 19 acres at $60,000 or slightly more than $3,000 per acre. Shaner testified that at the time of the taking, the condemnees' 61.43 acres was worth $180,000.
NRD claims that the trial court erred in allowing Shaner to testify as to the highest and best use of and the value of the 61.43 acres.
NRD, relying upon Langfeld v. Department of Roads, 213 Neb. 15, 328 N.W.2d 452 (1982), contends that because Shaner was not the owner of the property, he was not entitled to a presumption of being a competent witness as to the value of the taken property. In Langfeld, we held that an owner of real property shown to be familiar with the value of such land is a competent witness to testify as to its value for the use to which it is then being put, without additional foundation.
NRD interprets Langfeld too narrowly. While Shaner did not have title as owner of the 61.43 acres, his children and wife did, and he resided on land adjoining the 61.43 acres and had farmed the land which had included the 61.43 acres for 30 years. In Johnson's Apco Oil Co. v. City of Lincoln, 204 Neb. 397, 282 N.W.2d 592 (1979), we held that a stockholder of a corporation could testify as to the value of property owned by the corporation. In doing so, we stated:
While it is true that with stock ownership alone one does not become an owner of property held by a corporation in the sense of the word when applied to an individual owner, yet, do our decisions permitting a resident owner who is familiar with his property and knows its worth to testify as to its value without further foundation rest upon the mere fact that the owner holds legal title to the property? We think not. Rather, our decisions rest upon the owner's familiarity with the property's characteristics, its actual and potential uses, and his experience in dealing with it. This is what qualifies him to testify as to value.
Id. at 400, 282 N.W.2d at 594. The record reflects Shaner's familiarity with the condemned land's characteristics and uses as well as his experience farming that land. Based upon the record, Shaner was qualified as an "owner" to testify as to the property's value for its current use without further foundation.
Shaner's valuation is based upon the highest and best use of the property being recreational. The property at the time of taking was not being used for recreational purposes. Therefore, the condemnees needed to establish foundation for Shaner's expertise in the area of determining highest and best use, as well as expertise to determine the value of the 61.43 acres for recreational purposes.
Admissibility of expert testimony depends on whether specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. It is for the trial court to make the initial decision on whether the testimony will assist the trier of fact. The soundness of the trial court's determination depends upon the qualifications of the witness, the nature of the issue on which the opinion is sought, the foundation laid, and the particular facts of the case. Nebraska Depository Inst. Guar. Corp. v. Stastny, 243 Neb. 36, 497 N.W.2d 657 (1993).
The record reflects that Shaner received training and had employment experience with real estate values generally and in determining highest and best use of real property. The record specifically reflects that Shaner was experienced with the Washington County real estate market's agricultural and recreational properties and with land similar to that being condemned in this litigation. In order for the testimony of either an expert or lay witness to be admissible on the question of market value of real estate, the witness must not only be familiar with the property in question, but also with the state of the market. Thacker v. State, 193 Neb. 817, 229 N.W.2d 197 (1975). The trial court did not clearly err in finding that sufficient foundation was laid for Shaner to *723 testify as an expert as to the highest and best use and as to the value of the 61.43 acres.
NRD considered Shaner's testimony incredible. NRD's experts testified that the 61.43 acres involved here were not feasible for recreational purposes. It is noted that in its condemnation pleadings, NRD stated that among the uses for which it needed the 61.43 acres involved here was for public recreation purposes within "the corridor." NRD's experts also disputed Shaner's valuation of the land. If the evidence as to whether property is adaptable for a certain use is in conflict, it is the jury's province to determine which highest and best use and resulting valuation are more credible. Lincoln Branch, Inc. v. City of Lincoln, 245 Neb. 272, 512 N.W.2d 379 (1994).
NRD contends that Shaner's value of the 95-acre comparable sale was speculative. We disagree. The record reflects that Shaner determined the value of the 19 acres of recreational property by determining how much of the $160,000 sale price went to the 76 acres of agricultural land. Determining a value of recreational property by noting and adjusting for the differing value in agricultural property is not speculative.
In eminent domain proceedings where the sales price of other tracts are offered as evidence of market value of the tract taken, a wide discretion must be granted the trial judge in determining the admissibility of the evidence of the other sales. The evidence should not be admitted where there is a marked difference in the situation of the properties. Thacker v. State, supra. Whether the properties the subject of other sales are sufficiently similar to the property condemned to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the discretion of the trial court, which will not be interfered with unless abused. The exact limits, either of similarity or difference, or of nearness or remoteness in point of time, depend upon the location and character of the properties and the circumstances of the case. Langfeld v. Department of Roads, 213 Neb. 15, 328 N.W.2d 452 (1982). Shaner testified as to the similarity in location and character of the property. It cannot be said that the trial court abused its discretion in allowing Shaner to testify as to the comparability of the 95-acre sale price and the value of the 19 acres of treed riverfront.
NRD claims that the trial court erred in allowing Shaner to testify that Rohrberg informed him of the feasibility of adapting the 61.43 acres to recreational purposes. Rule 703 of the Nebraska Evidence Rules allows experts to rely on hearsay facts or data reasonably relied upon by experts in the field as a basis for their opinion. Brown v. Farmers Mut. Ins. Co., 237 Neb. 855, 468 N.W.2d 105 (1991). The trial court did not abuse its discretion in allowing Shaner to take into consideration Rohrberg's statements regarding the feasibility of recreational use as a highest and best use for the property in question.
NRD's argument that the trial court erred in not striking Shaner's testimony is meritless.

TESTIMONY OF RUSSELL NELSEN
Nelsen, a licensed real estate appraiser and broker, conducted an appraisal of the 61.43 acres. Nelsen determined that the highest and best use of the property was passive recreation, such as camping, picnicking, fishing, hiking, and birdwatching.
Nelsen utilized a comparable sale approach and income approach method to appraise the 61.43 acres. Nelsen based his comparable sale upon a 26.66-acre tract of land north of Blair which Nelsen stated sold for $300,000 through an installment contract. According to Nelsen, the $60,000 downpayment on the installment contract represented the "cash equivalency" of the sale price. Nelsen divided the $60,000 by the 26.66 acres to determine that the comparable land sold for $2,250 per acre for that part of the 26.66 acres which was nonagricultural treed land along the river. Nelsen acknowledged that the $60,000 was not the total amount paid. Nelsen stated that he did not know what amount was paid in the installments and that "a common appraisal practice is to arrive at an exact amount of cash that exchanged hands." *724 Nelsen testified that using this method, he valued the 61.43 acres at $123,600.
Nelsen, using the income approach method, also concluded that the 61.43 acres was worth $123,600. Nelsen relied upon information gathered from Rohrberg whose Iowa property earned an income of $10 per front foot. Nelsen capitalized projected net income, relying upon the $10 per front footage rental receivable by Rohrberg and discounting that to $8 per lineal foot. Nelsen made adjustments for a projected $3,000 capital expenditure. He estimated that the 61.43 acres, as a recreational project, would net $14,240 per year less an estimated 20 percent from vacancies, expenses, and capital expenditures over the first several years of startup.
Nelsen testified that the 20-percent figure represents a long-term estimate derived from an 8-percent expense figure used by Rohrberg and an additional 12 percent added by Nelsen to account for "other expenses" and interest. Under cross-examination, Nelsen stated that any projections as to occupancy rate would be guesswork on his part.
The NRD offered the testimony of James Grove, a real estate appraiser. Grove stated that he would not use the downpayment on a land contract as a reliable indication of the price paid for the real estate because the $300,000 land contract sale was never completed. Grove analyzed the 61.43 acres as wet chute and timber, waste from an agricultural standpoint, and valued the 61.43 acres at $39,200 or $637.52 per acre.
NRD contends that the trial court erred in allowing Nelsen to testify as to the sale price of a purported comparable piece of property. The value of an opinion of an expert witness, or any witness, must be dependent upon and is no stronger than the facts upon which it is predicated, and it has no probative force unless the assumptions upon which it was based are shown to be true. Langfeld v. Department of Roads, 213 Neb. 15, 328 N.W.2d 452 (1982). Generally, evidence as to the sale of comparable property is admissible as evidence of market value, provided there is adequate foundation to show the evidence is material and relevant. The foundation evidence should show the time of the sale, the similarity or dissimilarity of market conditions, the circumstances surrounding the sale, and other relevant factors affecting the market conditions at the time. Wear v. State Dept. of Roads, 215 Neb. 69, 337 N.W.2d 708 (1983). In condemnation proceedings where the value of real estate is in issue, evidence of particular sales of other land may not be introduced as independent proof on the question of value, unless foundation is laid indicating that prices paid represented the market or going value of such land. Timmons v. School Dist., 173 Neb. 574, 114 N.W.2d 386 (1962).
We do not agree with Nelsen's suggestion that one can place a fair market value of land at $60,000 because that is how much the buyer gave as downpayment on a $300,000 installment contract. The buyer and seller did not agree on the mere downpayment as the fair market value of the 26.66 acres.
The fair market value is the "`value of the property if offered for sale upon the open market as between one who is ready and willing to sell but is not compelled to sell, and one who is ready, able, and willing to buy but is not required to buy.'" Schmailzl v. State, 176 Neb. 617, 623, 126 N.W.2d 821, 825 (1964). Installment contracts should be carefully scrutinized before admitted as evidence because they may reflect terms at variance with custom and usage and it is common knowledge that deferred payment sales eventually cost the buyer more than if the buyer purchased upon a fair cash market value. See, Gradison v. State et al., 260 Ind. 688, 300 N.E.2d 67 (1973); Redfield v. Iowa State Hgwy. Commission, 252 Iowa 1256, 110 N.W.2d 397 (1961).
The record suggests that the buyer never paid the full $300,000 obligation of the installment contract. Nelsen testified that he used the downpayment because he did not know how much the buyer eventually expended. The knowledge that Nelsen needed in order to lay the foundation for a comparable sale, i.e., how much the buyer was actually ready and able to spend and the seller *725 willing to accept, was the precise knowledge that Nelsen lacked. Nelsen's testimony did not establish the existence of the supposed comparable sale that his valuation of the 61.43 acres relied upon. When an expert's opinion does not have a sound and reasonable basis such that the expert is able to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture, the opinion should be stricken. Holman v. Papio-Missouri River Nat. Resources Dist., 246 Neb. 787, 523 N.W.2d 510 (1994). To admit into evidence such a valuation to the trier of fact was an abuse of discretion on the part of the trial court.
Nelsen's capitalized projected net income was premised upon discounting the projected income by 20 percent each year for several years based upon startup expenses and vacancies.
The capitalizing of an estimate of the net rents from a probable use of the property is an accepted method of valuation. Iske v. Metropolitan Utilities Dist., 183 Neb. 34, 157 N.W.2d 887 (1968). NRD claims that Nelsen's use of a 20-percent discount in arriving at his estimate of net rents is mere speculation. Nelsen informed the jury that the 20-percent discount over several years is his estimation of startup costs, extraneous expenses, and vacancies over a long-term period. Although Nelsen could not know the occupancy ratio in the first years that the 61.43 acres would be used for recreational purposes, he based his long-term estimation regarding vacancies upon the Rohrberg recreational property. Thus, Nelsen based the 20 percent upon data he found as comparable from the Rohrberg property adjusted upward for additional capital expenditures. This is not mere speculation. Furthermore, the jury was provided with Nelsen's explanations of his methodology and NRD's attacks upon that methodology. The weight of Nelsen's credibility is reserved for the jury. See Lincoln Branch, Inc. v. City of Lincoln, 245 Neb. 272, 512 N.W.2d 379 (1994).

REFUSED JURY INSTRUCTION
NRD contends that the trial court erred in refusing its offered instruction that any decrease or increase in the fair market value of real property prior to the date of valuation caused by the likelihood that the property would be acquired for the public improvement for which such property is acquired, other than due to physical deterioration within the reasonable control of the owner, shall be disregarded in determining the compensation of the property.
To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction; (2) the tendered instruction is a correct statement of the law; and (3) the tendered instruction is warranted by the evidence. Rose v. City of Lincoln, 234 Neb. 67, 449 N.W.2d 522 (1989). NRD contends that the instruction was necessary because Shaner and his mother deeded the property to Shaner's children in anticipation of the taking of the 61.43 acres. NRD's argument establishes neither prejudice nor that the instruction is warranted by the evidence. The record does not reflect, and NRD does not guide us to where in the record it would reflect, any increase or decrease in the value of the property caused by the likelihood of the acquiring of the property for public improvement.

CONCLUSION
We hold that the trial court abused its discretion by admitting into evidence Nelsen's testimony regarding the contract sale of a claimed comparable land. As the error was prejudicial to the proceeding, we vacate the jury's verdict, reverse the judgment of the trial court, and remand the cause to the district court for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.